# EXHIBIT H

DECHERT

**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax

**Michael McGinley**
*Partner*

Michael.McGinley@dechert.com
+1 215 994 2463 Direct
+1 215 655 2131 Fax

November 19, 2025

**Via Email**

Paul N. Mascia, Esq. (FL Bar No. 0489670)
Michael A. Nardella, Esq. (FL Bar No. 051265)
NARDELLA & NARDELLA, PLLC
135 W. Central Boulevard, Suite 300
Orlando, Florida 32801
pmascia@nardellalaw.com
mnardella@nardellalaw.com

**Re:** ***Abacus Global Management, Inc. v. Coventry First LLC et al.*, No. 25-cv-01401 (M.D. Fla. 2025) ("Abacus Litigation") – Lapetus Solutions, Inc. Subpoena Response**

Counsel:

We write on behalf of Coventry First LLC and Alan Buerger (collectively, "Defendants") following our meet and confer on October 31, 2025. Lapetus's production of a single presentation deck, which was produced prior to the meet and confer call, remains the only document produced by your client in response to Defendants' August 29, 2025 subpoena ("Subpoena"). We write to demand production of all other documents responsive to the Subpoena,[1] which we will accept on a rolling basis. Without prejudice to the Subpoena's Document Requests as written, we write to clarify the key documents that you should prioritize for immediate production.

As an initial matter, you stated during our meet and confer call that your main concern was what you called the "relevance threshold" of Lapetus's documents in this action. Specifically, you explained your belief that Abacus's claims were not that Defendants contended Lapetus's life expectancy ("LE") estimates were inaccurate. Rather, you believe that the claims concerned Defendants' alleged statements regarding Abacus's valuations and whether such valuations were dependent on Lapetus LEs. Plaintiff's complaint directly refutes your understanding of Lapetus's relevance to the case. As we described in our October 20, 2025 letter, among its 213 references to Lapetus, Plaintiff alleges:

---

[1] Any term used herein should be interpreted as it was defined in the Subpoena.

> Since the beginning of 2024, Coventry and Buerger have routinely disseminated false and misleading statements about Abacus, in particular targeting Abacus's relationship with [Lapetus], a third-party life expectancy estimate provider that recently dissolved because of Defendants' conduct. *Defendants' core claim is that Lapetus life expectancies are too short, and that Abacus relies on those estimates to intentionally overvalue the policies it buys and sells. This is false, misleading, and defamatory for several reasons, including that:*
>
> a. *Lapetus life expectancies are not less accurate than the estimates of any other life expectancy provider*[2]

While several allegations certainly concern the use of Lapetus's LEs in the context of Abacus's valuations, the accuracy of Lapetus LEs is the "core claim" Plaintiff has identified. Even adopting your incorrect understanding of Plaintiff's allegations, the documents Defendants request would be highly relevant and discoverable as they relate to Abacus's valuations.

Second, you raised concerns about the cost of complying with the Subpoena. Courts are clear that non-parties must comply with subpoenas that are properly tailored to the needs of the case. *E.g.*, *Smartmatic USA Corp. v. Montgomery*, 2023 WL 4662241, at *3 (M.D. Fla. July 20, 2023) (reminding a third party of "his duty to respond in full to each request"); *Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n, Inc.*, 2023 WL 9792570, at *1-2 (M.D. Fla. Nov. 13, 2023) (finding that "the Federal Rules of Civil Procedure strongly favor full discovery whenever possible" so a non-party "resisting discovery has a heavy burden of showing why the requested discovery should not be permitted"). Notwithstanding Lapetus's obligation, we have engaged with Abacus to obtain documents that may also be in your client's possession. While any such production from Abacus would not discharge Lapetus of its own obligation to produce documents, we ask that you prioritize documents for production that are unlikely to be in Abacus's possession (*e.g.*, any documents or communications other than communications between Lapetus and Abacus).

In addition, and with the above caveat about prioritizing certain documents, in an attempt to narrow the scope of Defendants' Requests, we ask that you prioritize the documents described below as they relate to each of the Requests listed in the Subpoena and copied below.

> **Request 1: All Documents and Communications Concerning or with Abacus, including any agreements, contracts, business relationships, or strategic partnerships with Abacus.**

---

[2] Abacus Litigation, Dkt. 38 ("Amended Complaint") ¶¶ 6-7 (emphasis added).

DECHERT



**Request 2: All Documents and Communications Concerning (i) investments, (ii) convertible notes, or (iii) any other financial arrangements involving Abacus.**

As we discussed during our meet and confer call, Defendants are amenable to narrowing the scope of these Requests to *documents and communications concerning the extent and nature of the business and financial relationship between Abacus and Lapetus, including subparts (i), (ii), and (iii) of Request 2, as well as any agreements, contracts, or other documents or communications governing the provision of LEs by Lapetus to Abacus*. We agree to hold in abeyance (pending discovery discussions with Abacus) any communications directly between Abacus and Lapetus as well as documents concerning Abacus that do not relate to these underlined topics.

**Request 3: All Documents and Communications Concerning or with Coventry, except Documents maintained pursuant to any professional services agreement between Lapetus and Coventry.**

**Request 4: All Documents and Communications Concerning or with Alan Buerger, except Documents maintained pursuant to any professional services agreement between Lapetus and Coventry.**

As we discussed with respect to Requests 3 and 4, and as reflected in the Subpoena and in our October 20 deficiency letter, Defendants do not seek documents or communications maintained pursuant to any professional services agreement between Lapetus and Coventry, including but not limited to data Coventry provided to Lapetus or work product Lapetus provided to Coventry. During our meet and confer call, you raised the issue of documents containing internal Lapetus work related to LEs provided to Coventry. While we believe Lapetus's internal methodologies are key to establishing the truth of Defendants' statements concerning the accuracy of LEs, we do not believe Coventry's own business practices are at issue, and we are not seeking such documents related to Coventry. We also agree that Lapetus need not produce any communications *with* Defendants because such communications would likely be in Defendants' possession.

However, *documents and communications concerning Coventry's statements or beliefs about Abacus, Lapetus, and the accuracy or inaccuracy of any LE or valuation, are relevant and must be produced*. For example, to the extent Lapetus has in its possession documents or communications evaluating, analyzing, or discussing any of Defendants' statements or beliefs, those documents go to the heart of the potential claims and defenses. By way of obvious (and non-exhaustive) examples, if a Lapetus employee expressed a sympathetic (or unsympathetic) view of Defendants' statements, they would be relevant. Similarly, to the extent someone expressed their understanding

that Defendants' statements were their true opinion about a particular matter, such expression would be relevant.

**Request 6: All Documents and Communications Concerning the Life Insurance Settlement Association Conference, including presentations or statements made at the conference and any preparatory materials regarding the presentations or statements made at the conference.**

You agreed during our meet and confer that documents and communications concerning the debate between Mr. Buerger and Lapetus CEO Jay Olshansky, which took place at the 2024 Life Insurance Settlement Association ("LISA") Conference ("Fireside Chat"), are relevant. You expressed concern about the breadth of this Request and the difficulty in generating search terms. We agree to limit Request 6 to *documents and communications concerning the Fireside Chat portion of the LISA Conference*, but we otherwise seek all documents responsive to this Request.

**Request 12: All Documents and Communications Concerning press releases, website postings, conference presentations, and public remarks referencing or Concerning Abacus, Coventry, Lapetus's life expectancy estimates, or the valuation of life settlements.**

You expressed your belief that Request 12 is overbroad because it could encompass any public statement by anyone concerning the topics listed. Abacus has so far been unwilling to describe to Defendants which alleged statements in its Amended Complaint form the basis for their claims, and instead alleges a sweeping "campaign" by Defendants.[3] Therefore, we are unable to narrow the scope of public statements referenced in this Request. While we disagree that the Request is overbroad, we are willing to narrow this Request to include only documents and communications concerning those press releases, website postings, conference presentations, and public remarks *by Coventry, Abacus, Lapetus, or Morpheus Research* that relate to the above-referenced topics. You requested that we provide you with search terms for this Request. While we do not know the ways that Lapetus communicates, or any specific terms it may use, and we expect Lapetus to conduct its own reasonable review for all responsive documents, we would expect that terms like "press," "release," "statement," "remarks," "debate," "conference," "post*," "short seller," "Morpheus" or "website" may be useful when combined with references to "Abacus" or "Coventry" to refine the universe for review.

**Request 5: All Documents and Communications Concerning Jay Jackson's role with Abacus or Lapetus, including as a director of Lapetus.**

[3] *E.g.*, Am. Compl. ¶¶ 9, 13, 14, 17, 68, 87, 114, 120, 142, 144, 189, 192, 241.

DECHERT



> **Request 7: All Documents and Communications Concerning or with any investor or prospective investor in Abacus, including any fund or other entity managed or controlled by Abacus.**

As we explained in our October 20 letter, the Amended Complaint repeatedly puts at issue the role that Abacus CEO Jay Jackson played at Lapetus, as well as the nature of Lapetus's relationship with Abacus.[4] We stand on the language of Request 5 and expect Lapetus to produce all responsive documents.

With respect to Request 7, you represented that Lapetus does not believe it has any responsive documents. However, you explained the difficulty of searching for communications between Lapetus and any investor in Abacus, which is a publicly traded company. We agree to narrow Request 7 to *documents and communications concerning or with any fund or other entity managed or controlled by Abacus, or entities that have purchased insurance policies from Abacus, including Transamerica Corp. (often referred to as "Trans" or "Transamerica"), Kohlberg Kravis Roberts & Co. L.P. (often referred to as "KKR"), Nova Trading (US), LLC (often referred to as "Nova"), Reinsurance Group of America (often referred to as "RGA"), and any other insurers, reinsurers, credit unions, or investment banks or their affiliates.* Request 7 does not seek communications Lapetus had with Abacus's retail investors.

> **Request 8: All Documents and Communications Concerning the accuracy of Lapetus's life expectancy estimates, including analyses, studies, and reviews comparing Lapetus's life expectancy estimates with estimates provided by other providers.**

> **Request 9: All Documents and Communications Concerning any criticisms or questioning of Lapetus's life expectancy estimates.**

> **Request 10: All Documents and Communications Concerning any complaints Lapetus received Concerning its life expectancy estimates.**

As we have explained, the accuracy of Lapetus's LEs is central to the litigation. For context, Requests 8, 9, and 10 seek any documents or communications concerning the accuracy or inaccuracy of Lapetus LEs, any criticisms or complaints about Lapetus LEs, or any comparisons with other LE providers' LEs. You expressed concern regarding the breadth of these requests, as they could be read to encompass any work done related to the accuracy of Lapetus's business.

---

[4] Am. Compl. ¶¶ 90-91, 126-129, 132, 135-136, 214.

These particular Requests do not seek information concerning Lapetus's specific methodologies beyond what is included in the above-referenced analyses, studies, reviews, complaints, criticisms and comparisons. But these Requests would include—but are not limited to—any work done to analyze the accuracy of LEs following the release of the Morpheus Research reports. We stand on the language of these Requests.

> **Request 11: All Documents and Communications Concerning Lapetus's life expectancy calculations, estimations, projections, medical underwriting, actual-to-expected analyses, reconciliation reports, or methodologies related to Abacus, including all data related thereto.**

Abacus's use of Lapetus's LEs, and the related accuracy or inaccuracy of those LEs, is central to proving the truth or falsity of certain alleged statements by Defendants. You expressed concern regarding proprietary information that would reveal the formulas Lapetus uses to calculate LEs. But at a minimum, LEs themselves, as well as actual-to-expected results, would not fall into that category. With respect to documents that are truly sensitive, we are willing to accept certain documents designated Highly Confidential – Attorneys' Eyes Only, where appropriate, while reserving our rights to challenge any improper designations. To the extent you would like to discuss further protections of confidential information as you stated during our meet and confer call, please provide a proposal to do so.

> **Request 15: All Documents and Communications Concerning audits of life expectancies required to be filed with the Office of Insurance Regulation pursuant to Section 626.99175(g)(5) of the Florida Statutes, including final submissions, drafts, and any Documents used to generate such audits.**

As we stated during our meet and confer, any audits that relate to the accuracy or inaccuracy of Lapetus's LEs, including those required to be filed with the Florida OIR are directly relevant to the claims and defenses and should be produced. As discussed above and in light of the ongoing litigation concerning this issue, we are willing to accept documents designated Highly Confidential – Attorneys' Eyes Only, where appropriate. However, Defendants should not be prejudiced in the Abacus Litigation on the basis of other ongoing litigation.

> **Request 13: All Documents and Communications Concerning Lapetus's decision to end operations on August 31, 2025.**

> **Request 14: All Documents and Communications Concerning any "pressure from some clients to raise or lower" life expectancies, including any such pressure from Abacus, and any resulting reassessments by Lapetus.**

DECHERT



During our meet and confer call, we explained that the contention in Lapetus's responses and objections that no responsive documents exist was implausible. You appeared to draw a distinction between a decision concerning a "voluntary dissolution" of Lapetus (which you represented has not occurred), and a decision to end its LE business, which you conceded had occurred but challenged its relevance. Of course, Lapetus's own public statement concerning its decision to end operations contended that it received "pressure from some clients to raise or lower" life expectancies. That contention is directly related to the claims and defenses. In addition, the Amended Complaint itself purportedly quotes Lapetus as telling investors that "in May of 2024, one of [Lapetus's] clients, Coventry, began a major campaign to tarnish our reputation in the [life settlement] industry after we refused to fraudulently adjust our LEs for [Coventry's] financial benefit."[5] We stand on our original Request. Any documents or communications that concern this issue, or are responsive to Requests 13 and 14, must be produced.

* * *

Defendants are willing to meet and confer over the next week. However, given the significant length of time that has passed without anything more than a nominal document production, Lapetus should make a substantial, good faith production of the documents that are not subject to any further negotiation. If Lapetus is unwilling to make such a production by November 26, please notify me upon receipt of this letter. Defendants reserve all their rights.

Very truly yours,

Michael H. McGinley

[5] Am. Compl. ¶ 189 (emphasis removed).