# EXHIBIT I

DECHERT

**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax

**Michael McGinley**
*Partner*

Michael.McGinley@dechert.com
+1 215 994 2463 Direct
+1 215 655 2131 Fax

October 20, 2025

**Via Email**

Paul N. Mascia, Esq. (FL Bar No. 0489670)
Michael A. Nardella, Esq. (FL Bar No. 051265)
NARDELLA & NARDELLA, PLLC
135 W. Central Boulevard, Suite 300
Orlando, Florida 32801
pmascia@nardellalaw.com
mnardella@nardellalaw.com

**Re:** ***Abacus Global Management, Inc. v. Coventry First LLC et al.*, No. 25-cv-01401 (M.D. Fla. 2025) ("Abacus Litigation") – Lapetus Solutions, Inc. Subpoena Response Deficiencies**

Counsel:

We write on behalf of Coventry First LLC and Alan Buerger (collectively, "Defendants") concerning numerous deficiencies in Lapetus Solutions, Inc.'s ("Lapetus") September 26, 2025 Responses and Objections to Defendants' Subpoena Duces Tecum (the "Subpoena" and "Responses"). Lapetus's virtually blanket refusal to produce relevant documents violates the Federal Rules and is sanctionable. And Lapetus's unreasonable stance is all the more troubling given that your client has taken actions suggesting that it is coordinating with Abacus with regard to this action. Defendants demand that Lapetus immediately correct the fundamental deficiencies outlined below. Defendants request a call to meet and confer this week to discuss the deficiencies.

Defendants are willing to discuss narrowing the scope of certain requests to ensure timely production of the documents that are most relevant to the claims and defenses in the Abacus Litigation. However, should Lapetus fail to amend and supplement its Responses and produce relevant documents, Defendants will have no choice but to seek court intervention. Defendants expressly reserve, and do not waive, their right to identify additional deficiencies or to seek further answers from Lapetus in the future.

## Material Deficiencies in Lapetus's Responses

Lapetus's complete refusal to produce documents in response to the Subpoena is improper. Abacus has made Lapetus a central figure in this litigation. Thus, Lapetus's documents are critical to

substantially all claims and defenses. Among its 213 references to Lapetus, Abacus's Amended Complaint pointedly alleges:

> Since the beginning of 2024, Coventry and Buerger have routinely disseminated false and misleading statements about Abacus, in particular targeting Abacus's relationship with Lapetus Solutions, Inc. ("Lapetus"), a third-party life expectancy estimate provider that recently dissolved because of Defendants' conduct. *Defendants' core claim is that Lapetus life expectancies are too short*, and that Abacus relies on those estimates to intentionally overvalue the policies it buys and sells.[1]

Lapetus's General and Specific Objections repeatedly assert that Defendants' requests are irrelevant and disproportionate to the needs of the case. But, given Lapetus's undeniable relevance to the claims and defenses in this litigation, it must, at a minimum, make a substantial, good faith effort to actually comply with the Subpoena. For example, in General Objection 8, Lapetus asserts that it "has made and is making reasonable efforts to locate and produce all documents in its possession" for unobjectionable requests. While the statement properly states Lapetus's obligations under federal law, the rest of Lapetus's Responses suggest that Lapetus is making no such "reasonable efforts." Lapetus produced a single document and its Specific Objections indicate that it does not intend to produce anything more.

Similarly, General Objection 3 states that Lapetus will only produce documents in its possession, custody, or control, but not any within its "constructive possession." That is inconsistent with Lapetus' obligations under the Federal Rules. Instead, Lapetus must search for and produce documents that are reasonably accessible to it, including those in its possession, custody, or control, or to which it has access, of its current and former agents, employees, representatives, affiliates, officers, directors, partners, managers, predecessors in interest, and subsidiaries, and anyone acting or purporting to act on its behalf. This includes, and is not limited to, Lapetus Life Event Solutions.[2]

With respect to the relevant time period, Lapetus contends in General Objection 12 that the temporal scope of the Subpoena is unduly burdensome and overbroad, but it does not provide a date range for which it will search and produce documents. Lapetus states only that the Subpoena's timeframe of January 1, 2022 through the present "far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint." As noted above,

---

[1] Abacus Litigation, Dkt. 38 ("Amended Complaint") ¶ 6 (emphasis added).

[2] Abacus Global Management, Inc., Annual Report (Form 10-K) at 7 ("Lapetus Life Event Solutions—partnership between Abacus and Lapetus Solutions, Inc. to build and develop current life expectancy tables based on our 18 years of data.").

however, Abacus's complaint covers a multi-year period involving Lapetus. Hence, Lapetus, which is Abacus's admitted partner and the subject of many of the statements that Abacus has put at issue in the suit, is subject to discovery over a multi-year period and not some short unidentified period of Lapetus's choosing.

Separately, over a dozen times in its Specific Objections, Lapetus states that it would be too burdensome to produce documents spanning a "decade." Defendants only seek documents starting in 2022. The Amended Complaint alleges at a minimum that "as early as October of 2023, Defendants have been spreading false statements that Abacus owns Lapetus and that Abacus uses Lapetus to obtain 'favorable' LEs."[3] Defendants are willing to agree to a start date based on the beginning of Lapetus's relationship with Abacus, to the extent the relationship is shorter than the time frame in the Subpoena.

**Additional Deficiencies in Specific Responses**

In its Specific Responses, Lapetus fails to provide responsive information even accounting for its own overly broad and boilerplate objections. In many cases, Lapetus improperly attempts to reframe the Requests by providing alternative language that the Subpoena does not use. Defendants reject Lapetus's purported rewriting of the Subpoena. Lapetus also makes repeated references to its failure to produce responsive documents unless the "Court requires any production." In doing so Lapetus ignores its own obligation to respond completely to each request.[4] Forcing court intervention before Lapetus will produce relevant information is abusive and contrary to the Federal Rules.

Defendants demand that Lapetus meet those obligations now, and resolve the deficiencies in its Specific Responses, which include without limitation, the following:

***Request Nos. 1, 3, and 4***

Defendants request Lapetus's Documents and Communications concerning the parties in this action. Lapetus categorically refuses to produce any documents in response to these Requests. Defendants reject Lapetus's assertion that these requests have "no bearing" on the claims or defenses in this case. There is no dispute that Lapetus, its life expectancy business, its relationship with Abacus, and its interactions concerning Coventry, are at the very core of the dispute. As

---

[3] Am. Compl. ¶ 90.
[4] *See e.g.*, *Smartmatic USA Corp. v. Montgomery*, No. 2:23-MC-5-JLB-KCD, 2023 WL 4662241, at *3 (M.D. Fla. July 20, 2023) (reminding a third party of "his duty to respond in full to each request"); *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366 (D. Nev. 2019) (describing "an affirmative duty to seek … information reasonably available").

DECHERT



Request No. 3 makes clear, Coventry does not seek documents or communications maintained pursuant to any professional services agreement between Lapetus and Coventry, including but not limited to data Coventry provided to Lapetus or work product Lapetus provided to Coventry. Defendants are willing to meet and confer regarding what Defendants believe would be a reasonable search for documents in response to these Requests, but Lapetus's blanket refusal to produce any documents is sanctionable given its clear obligation under the Federal Rules to search for and produce documents responsive to a subpoena.

***Request Nos. 6 and 12***

Defendants requested Documents and Communications concerning public representations by or concerning the parties and Lapetus's own life expectancies and valuations. Documents reflecting Lapetus's views regarding the very statements that Abacus challenges as defamatory—as well as other, related public statements—are relevant to the claims and defenses, including ascertaining the truth of those statements. To take just one obvious example, a communication evidencing Lapetus's agreement that Coventry's statements had merit, or were true, would be material to Defendants' defenses.

Defendants also specifically requested Documents and Communications concerning the Life Insurance Settlement Associate ("LISA") Conference in 2024. Abacus repeatedly cites the LISA Conference in its Amended Complaint, noting, for example, that "Coventry and Buerger published these false and defamatory statements about Abacus to numerous third parties on the internet through email, blog posts, and at industry events such as the LISA Life Settlement Conference in Miami, Florida in October 2024."[5] Lapetus objects to producing relevant documents, stating that it "imposes a burden upon a non-party that can easily be satisfied by obtaining the requested information from the public domain … Lapetus's presentation and statements at the 2024 LISA Conference are available on the internet." This is incorrect. Lapetus's objection ignores the existence, and relevance, of Lapetus's ***non-public*** communications and other documents concerning the LISA Conference, including any information concerning Defendants' allegedly defamatory statements at the conference.

***Request Nos. 2, 5 and 7***

Defendants requested Documents and Communications concerning the extent of Lapetus's business relationship with Abacus, including information on joint financial arrangements, shared directors, and interactions with Abacus investors. These Requests are directly relevant to the claims and defenses. Once again, Abacus put these topics squarely at issue.

[5] Am. Compl. ¶ 201; *see also* ¶¶ 217 & 233 (substantially similar).

The Amended Complaint states flatly that "Defendants have been spreading false statements that Abacus owns Lapetus" and that "[i]ndustry insiders told Abacus employees that Coventry was going to use Abacus's falsely-claimed 'ownership' of Lapetus to damage the image and stock price of Abacus, with one broker telling an Abacus employee that Coventry viewed Lapetus as the only thing Coventry had 'against' Abacus."[6] The Amended Complaint also alleges that:

> A prior unpaid nominal board position held by [Jay] Jackson in which Mr. Jackson was in an advisory position, he did not have authority or capacity to act on Lapetus's behalf, and he was only minimally involved with Lapetus's operations. And Abacus purportedly 'invest[ed] heavily in Lapetus.' The heavy investment? A $1 million convertible note, that may result in at most 5% ownership upon conversion, which 'would not grant [Abacus] any influence or control over Lapetus.'[7]

As the Amended Complaint suggests, Abacus's reliance on Lapetus, and the nature of their financial relationship and shared personnel, is directly relevant to the claims and defenses here.

Yet, Lapetus, as it has with every request, objects that production of documents responsive to these Requests would be burdensome. There is no possible basis for that blanket objection. For example, it is unclear why communications Lapetus had concerning Abacus investors or documents concerning Jay Jackson's purportedly "nominal board position" or communications regarding a mere "$1 million convertible note" would be unduly burdensome to collect and produce. Nevertheless, Defendants would seek to meet and confer concerning these Requests. Similarly, to the extent Lapetus objects as to what is meant by the words "investment" (Request No. 2) and "role" (Request No. 5), Defendants are available to meet and confer regarding that issue.

***Request Nos. 8, 9, 10, 11, and 15***

Defendants requested Documents and Communications concerning specific aspects of Lapetus's life expectancy estimates, including comparisons with other life expectancy providers, criticisms or complaints, regulatory audits, and calculations and methodologies related to Abacus. The accuracy of Lapetus's life expectancy estimates is the basis for substantially all of the allegations in this action. The Amended Complaint states that ***Abacus's*** own CEO "made clear that Lapetus's

---

[6] *Id.* ¶¶ 90 & 91.
[7] *Id.* ¶ 135 (emphasis removed).

DECHERT



estimates reported to the state of Florida are in line with other life expectancy providers."[8] Abacus also alleges that "Coventry's true motivation for its [Petition for Writ of Mandamus with the Florida OIR] is laid bare in paragraph 18 of the Writ—yet another public vehicle to attack Abacus by way of attacking Lapetus."[9] The documents and communications responsive to these requests will obviously be relevant to the claims and defenses.

Defendants are cognizant of the issues concerning personally identifiable and personal health information in this case. Defendants would like to meet and confer to ensure such personal data is properly protected.

***Request Nos. 13 and 14***

Defendants requested Documents and Communications related to Lapetus's decision to end operations earlier this year. In response to Request No. 13, Lapetus inexplicably stated that "it has no documents" concerning its "decision to end operations." It defies logic to believe that any company could shut down all of its operations and then, less than one month later, possess no document concerning the decision to do so. Further, in response to Request No. 14, Lapetus stated that it is "unaware of responsive documents that are being withheld." But that Request quotes directly from Lapetus's own statement asserting that it received "pressure from some clients to raise or lower" life expectancies.

The Amended Complaint devotes an entire section to asserting that "Defendants finally succeeded in destroying Lapetus."[10] It even quotes directly from Lapetus's message to its investors, which alleged that "Coventry[] began a major campaign to tarnish our reputation in the [life settlement] industry after Defendants refused to fraudulently adjust our LEs for [Coventry's] financial benefit."[11] Lapetus's assertion that producing documents on this issue that were created over the just the past few months is "overbroad" or "burdensome" or "irrelevant" is belied by Abacus's alleged facts and Lapetus's statements and actions.

* * *

[8] *Id.* ¶ 127; *see also id.* ¶ "131 ("Coventry made defamatory statements about Abacus directly to regulators as part of a pleading seeking disclosure of information Lapetus provided to Florida OIR.").
[9] *Id.* ¶ 133.
[10] *Id.* ¶ 188.
[11] *Id.* ¶ 189 (emphasis removed); *see also* ¶ 190 ("Lapetus also issued a public statement, cited in Defendants' motion to dismiss … noting one reason it had been forced to close was its integrity, referencing the pressure put on by Buerger and Coventry.").

DECHERT



Defendants propose to meet and confer this week, and in any event, no later than October 27, 2025 concerning the deficiencies in Lapetus's Responses. Please provide your availability to meet as soon as possible.

Very truly yours,

______________________
Michael H. McGinley