# EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ABACUS GLOBAL MANAGEMENT, INC., a corporation,<br>Plaintiff,<br><br>v.<br><br>COVENTRY FIRST LLC, a limited liability company; ALAN BUERGER, an individual,<br>Defendants. | Case No.: 25-cv-01401-RBD-RMN |

**LAPETUS SOLUTIONS, INC.'S RESPONSES AND OBJECTIONS**
**TO DEFENDANTS' SUBPOENA *DUCES TECUM***

Non-party Lapetus Solutions, Inc. ("Lapetus" or "Responding Party"), by and through undersigned counsel, and, pursuant to Federal Rules of Civil Procedure 34 and 45, responds and objects to the Subpoena *Duces Tecum* issued by Defendants Coventry First LLC ("Coventry") and Alan H. Buerger ("Buerger" and together with Coventry, "Defendants" or "Propounding Party"), and in support thereof states as follows:

**GENERAL OBJECTIONS**

1. Responding Party's investigation and development of all facts and circumstances relating to this matter is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Responding Party's right to rely on other facts or documents at a later point.

2. By making the accompanying responses and objections to Propounding Party's requests for documents, Responding Party does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Responding Party makes the responses and objections herein without in any way implying that it considers the requests, and responses to the requests, to be relevant or material to the subject matter of this action.

3. Responding Party will produce responsive documents only to the extent that such documents are in the possession, custody, or control of the Responding Party, as set forth in the Federal Rules of Civil Procedure. The Responding Party's possession, custody, or control does not include any constructive possession that may be conferred by the Responding Party's right or power to compel the production of documents or information from third parties or to request their production from other parties in this action.

4. A response to a document request stating that objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that the Responding Party performed any of the acts described in the document request, or definitions and/or instructions applicable to the document request, or that the Responding Party acquiesces in the characterization of the conduct or activities contained in the document request, or definitions and/or instructions applicable to the document request.

5. Responding Party expressly reserves the right to supplement, clarify, revise,

or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6. Publicly available documents including, but not limited to, newspaper clippings, court papers, and documents available on the Internet, will not be produced.

7. Responding Party objects to each instruction, definition, document request, and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of this Court.

8. Documents in the possession, custody or control of the Responding Party are not segregated into the category set forth in the propounding party's request, but are produced as they are kept in the usual course of business. The Responding Party has made and is making reasonable efforts to locate and produce all documents in its possession with their compliance with each unobjectionable request as the Responding Party understands and interprets each such request. If the Propounding Party subsequently asserts an interpretation of any request which differs from that of the Responding Party, the Responding Party reserves the right to supplement their responses and objections.

9. The responses set forth below represent the Responding Party's present knowledge based on its discovery, investigation, and preparation to date. Its discovery, investigation and preparation may be ongoing. Responding Party expressly reserves the right to rely upon any further information revealed upon completion of discovery, investigation, and any additional preparation.

10. Lapetus objects to Instruction Nos. 7 and 10 as they impose requirements beyond the applicable Federal Rules of Civil Procedure.

11. Lapetus objects to Instruction No. 8 and will seek agreement with Defendants to agree upon reasonable production protocols to provide for the production of ESI in the manner in which documents and communication are regularly maintained in the ordinary course by Lapetus and in a manner commensurate with the needs of the case.

12. Lapetus objects to the timeframe of January 1, 2022, through the present as overbroad and unduly burdensome, because it far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

13. Any response by Lapetus that it will produce information or documents in response to a request is not an acknowledgement that any such information or document exists or ever exists. Lapetus agrees only to conduct a reasonable search if required over any applicable objections and, if found, produce relevant, responsive, non-privileged information or documents not subject to the General Objections or any other specific objections.

**SPECIFIC OBJECTIONS AND RESPONSES TO**
**DEFENDANTS *DUCES TECUM* REQUESTS**

***1. All Documents and Communications Concerning or with Abacus, including any agreements, contracts, business relationships, or strategic partnerships with Abacus.***

**RESPONSE:**

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning or with Abacus," which under the Defendant's vague and overbroad definition of the term "concerning," that includes undefined and terms and phrases including, without limitation "connected with," "bearing upon," and "touching upon" could be read to encompass literally every document in the possession of Lapetus that implicates its life expectancy services, for which Abacus has been a significant customer, or the life settlement industry in which Abacus is a major participant. Lapetus therefore reasonably interprets the request to mean "all documents that expressly state or identify Abacus and any communications between Lapetus and Abacus."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that expressly state or identify Abacus and any communications between Lapetus and Abacus," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. The documents of Lapetus and communications between Lapetus and Abacus have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly

overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint. The Request, even as reasonably interpreted, would require the production of hundreds of thousands of pages documents and communications that have no bearing on this case.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request, even as reasonably interpreted, is further unduly burdensome and disproportionate to the needs of this case as it would require Lapetus, a non-party in this proceeding, (i) to literally review each of the hundreds of thousands of documents in its possession, custody or control, in order to even identify those that expressly state or identify Abacus, and (ii) assemble, review and produce all of its communications with Abacus that span approximately a decade.

The Request is further unduly burdensome in that it imposes a burden upon a non-party that can easily be satisfied by first seeking the requested information from a party to this action—which Defendants have neglected to do. Any documents or communications

between Lapetus and Abacus can easily be obtained from Abacus. Even there was to be a determination that certain Lapetus documents or communications are related to the claims in this action, the Request will still be unduly burdensome because they can first be sought from Abacus. It is unduly burdensome to impose upon a non-party a requirement to produce what is necessarily in the possession, custody or control of a party to this action without at least first seeking the documents from the party—much less to the magnitude requested here.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial information. By way of example, and without limitation, the Request, even as reasonably interpreted, would require Lapetus to produce all of the approximately 10,000 life expectancy reports produced by Lapetus for Abacus over approximately the past decade. The Request would not only require Lapetus to produce its proprietary life expectancy reports themselves, but also all of Lapetus' related internal documentation and work product, all of which would disclose Lapetus' proprietary processes, methodologies, data and trade secrets. The Request would further require Lapetus to disclose communications with Abacus in which Lapetus provided opinions and memoranda which constitute Lapetus' confidential and proprietary commercial information. Disclosure of Lapetus' trade secrets and confidential information to Defendants—who are in the very same industry life settlements industry—would cause significant and irreparable competitive harm to Lapetus because it could be used by Defendants to reverse engineer Lapetus' proprietary processes to compete with or otherwise harm Lapetus' financial interests.

Lapetus further objects to this Request because it demands production of Abacus' confidential information that is restricted from disclosure under Lapetus' Professional Services Agreement with Abacus. The documents and communications that are the subject of this Request contain not only Lapetus' own proprietary and confidential data, but also the confidential information of Abacus. Lapetus' production of Abacus' confidential information would cause it to breach the very same confidentiality obligations that the Defendants have demanded Lapetus honor as to their own Professional Services Agreement with Lapetus.

Lapetus further objects to this Request because it demands production of information constituting "protected health information" as defined in 45 C.F.R. § 160.103, for approximately 10,000 individuals whose health information was provided by Abacus in connection with Lapetus' preparation of a life expectancy report or other opinion for Abacus. Beyond being entirely irrelevant to the claims in this action, disclosure of these patients private health information is precluded by the Health Information Portability and Accountability Act of 1996 ("HIPAA"), as amended, and regulations promulgated thereunder.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Compliance with the Request would require a physical review of the entirety of Lapetus' documents to determine which mention Abacus, along with a review of every communication Lapetus ever had with Abacus over a decade—totaling hundreds of thousands of pages—the cost of which could easily exceed $100,000 in the aggregate for internal, third-party e-discovery vendor and legal expenses, including attorney review for confidentiality and privilege. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Lapetus further objects to the Request to the extent that it requires the production of documents or communication subject to the attorney-client or work product privileges. Until the Court establishes the appropriate scope of production (if any) in response to this Request, it is not possible for Lapetus to conduct the necessary privilege review and produce any privilege log that may be required.

Lapetus further objects to the Request as an improper attempt to avoid discovery limitations in the currently pending state court action *Lapetus Solutions, Inc. v. Florida Office of Insurance Regulation*, Case No. 2025-CA-516 pending in the Circuit Court of the Second Judicial County in and for Leon County, Florida (the "State Court Case"), in which Coventry has intervened as party defendant. Defendants should not be permitted to obtain

as discovery in this matter documents that it cannot rightfully obtain in the State Court Case.

Without waiving the foregoing objections, Lapetus states that responsive documents are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

***2. All Documents and Communications Concerning (i) investments, (ii) convertible notes, or (iii) any other financial arrangements involving Abacus.***

**RESPONSE:**

Lapetus objects to this Request as vague, as the terms "investments" is undefined and capable of various interpretations. As drafted, the Request could be interpreted to include virtually any broadly defined "financial arrangement" or unspecified "investment" Lapetus may be deemed to have with Abacus—an entity that it has done business with for approximately a decade. Lapetus further objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning" these items. Defendant's vague and overbroad definition of the term "concerning," includes undefined and terms and phrases including, without limitation "connected with," "bearing upon," and "touching upon" that could be read to encompass literally every document in the possession of Lapetus that in any way remotely touches on its business of Abacus. Lapetus therefore reasonably interprets this Request to require the production of "all Documents and Communications that expressly identify or discuss a promissory note that evidences a loan from Lapetus to Abacus or the purchase by Lapetus of shares of stock in Abacus."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that expressly identify or discuss a promissory note that evidences a loan from Lapetus to Abacus or the purchase by Lapetus of shares of stock in Abacus," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. Any such documents or communications of Lapetus have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint. The Request, even as reasonably interpreted, would require the production of documents and communications that have no bearing on this case.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request, even as reasonably interpreted, is further unduly burdensome as it imposes a burden upon a non-party that can easily be satisfied by first seeking the requested information from a party to this action—which Defendants have neglected to do. Any such documents and communications between Lapetus and Abacus can easily be obtained from Abacus. Even there was to be a determination that certain Lapetus documents or communications are related to the claims in this action, the Request will still be unduly burdensome because they can first be sought from Abacus. It is unduly burdensome to impose upon a non-party a requirement to produce what is necessarily in the possession, custody or control of a party to this action without at least first seeking the documents from the party.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' confidential commercial information. Beyond what is required to be disclosed by Abacus with the United States Security and Exchange Commission or has otherwise been publicly made available by Abacus, the existence and terms of any loan to or investment of Lapetus is its confidential commercial information. The Request would further require Lapetus to disclose communications with Abacus concerning Lapetus' confidential commercial information. Disclosure of Lapetus' confidential information to Defendants—who are in the very same industry life settlements industry—would cause significant and irreparable competitive harm to Lapetus because it could disadvantage its commercial interests in the

marketplace by disclosing its assets and the terms upon which it engages in financial transactions.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants.

Lapetus further objects to the Request to the extent that it requires the production of documents or communication subject to the attorney-client or work product privileges. Until the Court establishes the appropriate scope of production (if any) in response to this Request, it is not possible for Lapetus to conduct the necessary privilege review and produce any privilege log that may be required.

Without waiving the foregoing objections, Lapetus states that responsive documents are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

***3. All Documents and Communications Concerning or with Coventry, except Documents maintained pursuant to any professional services agreement between Lapetus and Coventry.***

**RESPONSE**:

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning or with Coventry," which under the Defendant's vague and overbroad definition of the term "concerning," that includes undefined and terms and phrases including, without limitation "connected with," "bearing upon," and "touching upon" could be read to encompass literally every document in the possession of Lapetus that implicates its life expectancy services, for which Coventry has been a significant customer, or the life settlement industry in which Coventry is a major participant. The Request is further objectionable as vague in that it requires Lapetus to guess at which documents and communications are "maintained pursuant to any professional services agreement between Lapetus and Coventry."

Lapetus therefore reasonably interprets the request to mean "all documents that expressly state or identify Coventry and any communications between Lapetus and Coventry."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that expressly state or identify Coventry and any communications between Lapetus and Coventry," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. Any such documents or communications have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by

life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint. The Request, even as reasonably interpreted, would require the production of tens, if not hundreds, of thousands of pages documents and communications that have no bearing on this case.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request, even as reasonably interpreted, is further unduly burdensome and disproportionate to the needs of this case as it would require Lapetus, a non-party in this proceeding, (i) to literally review each of the hundreds of thousands of documents in its possession, custody or control, in order to even identify those that expressly state or identify Coventry, and (ii) assemble, review and produce all of its communications with Coventry that span a number of years.

The Request is further unduly burdensome in that it imposes a burden upon a non-party that can easily be satisfied by Coventry reviewing its own records—which Defendants have neglected to do. Any documents and communications between Lapetus and Coventry can easily be obtained from Coventry itself. Even there was to be a determination that certain Lapetus documents or communications are related to the claims in this action, the Request will still be unduly burdensome because Coventry can obtain the records from its own records. It is unduly burdensome to impose upon a non-party a requirement to produce what is necessarily in the custody or control of the requesting party—much less to the magnitude requested here.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial information. By way of example, and without limitation, the Request, even as reasonably interpreted, would require Lapetus to produce all of the thousands of life expectancy reports produced by Lapetus for Coventry over a period of years—which Coventry already has but if produced will be required to be disclosed with Abacus in this proceeding. The Request would not only require Lapetus to produce its proprietary life expectancy reports themselves, but also all of Lapetus' related internal documentation and work product, all of which would disclose Lapetus' proprietary processes, methodologies, data and trade secrets. The Request would further require Lapetus to disclose communications with Coventry in which Lapetus provided opinions and memoranda which constitute Lapetus' confidential and proprietary commercial information. Disclosure of Lapetus' trade secrets and confidential information to Defendants or Lapetus—who are in the very same industry

life settlements industry—would cause significant and irreparable competitive harm to Lapetus because it could be used by Defendants to reverse engineer Lapetus' proprietary processes to compete with or otherwise harm Lapetus' financial interests.

Lapetus further objects to this Request because it demands production of information in this case constituting "protected health information" as defined in 45 C.F.R. § 160.103, for approximately 10,000 individuals whose health information was provided by Coventry in connection with Lapetus' preparation of a life expectancy report or other opinion for Coventry. Beyond being entirely irrelevant to the claims in this action, disclosure of these patients' private health information is precluded by the Health Information Portability and Accountability Act of 1996 ("HIPAA"), as amended, and regulations promulgated thereunder.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Compliance with the Request would require a physical review of the entirety of Lapetus' documents to determine which mention Coventry, along with a review of every communication Lapetus ever had with Coventry over a period of years—totaling hundreds of thousands of pages—the cost of

which could exceed $100,000 in the aggregate for internal, third-party e-discovery vendor and legal expenses, including attorney review for confidentiality and privilege. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Lapetus further objects to the Request to the extent that it requires the production of documents or communication subject to the attorney-client or work product privileges. Until the Court establishes the appropriate scope of production (if any) in response to this Request, it is not possible for Lapetus to conduct the necessary privilege review and produce any privilege log that may be required.

Lapetus further objects to the Request because it conflicts with Coventry's prior demand that Lapetus not produce any documents that are subject to the confidentiality provisions of Lapetus' Professional Services Agreement with Coventry. Lapetus may be placed in legal jeopardy by producing responsive documents that Coventry later deems were supposed to be kept confidential.

Without waiving the foregoing objections, Lapetus states that responsive documents are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

***4. All Documents and Communications Concerning or with Alan Buerger, except Documents maintained pursuant to any professional services agreement between Lapetus and Coventry.***

**RESPONSE:**

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning or with Alan Buerger," which under the Defendant's vague and overbroad definition of the term "concerning," that includes undefined and terms and phrases including, without limitation "connected with," "bearing upon," and "touching upon" could be read to encompass literally every document in the possession of Lapetus that implicates its life expectancy services, for which Buerger through Coventry has been a significant customer, or the life settlement industry in which Buerger is a major participant. The Request is further objectionable as vague in that it requires Lapetus to guess at which documents and communications are "maintained pursuant to any professional services agreement between Lapetus and Coventry."

Lapetus therefore reasonably interprets the request to mean "all documents that expressly state or identify Buerger and any communications between Lapetus and Buerger."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that expressly state or identify Buerger and any communications between Lapetus and Buerger," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. Any such documents or communications have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus

manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint. The Request, even as reasonably interpreted, would require the production of tens, if not hundreds, of thousands of pages documents and communications that have no bearing on this case.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request, even as reasonably interpreted, is further unduly burdensome and disproportionate to the needs of this case as it would require Lapetus, a non-party in this proceeding, (i) to literally review each of the hundreds of thousands of documents in its possession, custody or control, in order to even identify those that expressly state or

identify Buerger, and (ii) assemble, review and produce all of its communications with Buerger and Coventry that span a number of years.

The Request is further unduly burdensome in that it imposes a burden upon a non-party that can easily be satisfied by Coventry and Buerger reviewing their own records—which Defendants have neglected to do. Any documents or communications between Lapetus and Buerger can easily be obtained from Coventry or Buerger. Even if there was to be a determination that certain Lapetus documents or communications are related to the claims in this action, the Request will still be unduly burdensome because Defendants can obtain the records from their own records. It is unduly burdensome to impose upon a non-party a requirement to produce what is necessarily in the possession, custody or control of the requesting party—much less to the magnitude requested here.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial information. By way of example, and without limitation, the Request, even as reasonably interpreted, would require Lapetus to produce all of the thousands of life expectancy reports produced by Lapetus for Coventry over a period of years—which Coventry already has but if produced will be required to be disclosed with Abacus in this proceeding. The Request would not only require Lapetus to produce its proprietary life expectancy reports themselves, but also all of Lapetus' related internal documentation and work product, all of which would disclose Lapetus' proprietary processes, methodologies, data and trade secrets. The Request would further require Lapetus to disclose communications with Buerger in which Lapetus provided opinions and memoranda which constitute Lapetus'

confidential and proprietary commercial information. Disclosure of Lapetus' trade secrets and confidential information to Defendants or Lapetus—who are in the very same industry life settlements industry—would cause significant and irreparable competitive harm to Lapetus because it could be used by Defendants to reverse engineer Lapetus' proprietary processes to compete with or otherwise harm Lapetus' financial interests.

Lapetus further objects to this Request because it demands production of information in this case constituting "protected health information" as defined in 45 C.F.R. § 160.103, for approximately 10,000 individuals whose health information was provided by Coventry in connection with Lapetus' preparation of a life expectancy report or other opinion for Coventry. Beyond being entirely irrelevant to the claims in this action, disclosure of these patients' private health information is precluded by the Health Information Portability and Accountability Act of 1996 ("HIPAA"), as amended, and regulations promulgated thereunder.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Compliance with the Request would require a physical review of the entirety of Lapetus' documents to determine which

mention Buerger, along with a review of every communication Lapetus ever had with Buerger over a period of years—totaling hundreds of thousands of pages—the cost of which could exceed $100,000 in the aggregate for internal, third-party e-discovery vendor and legal expenses, including attorney review for confidentiality and privilege. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Lapetus further objects to the Request to the extent that it requires the production of documents or communication subject to the attorney-client or work product privileges. Until the Court establishes the appropriate scope of production (if any) in response to this Request, it is not possible for Lapetus to conduct the necessary privilege review and produce any privilege log that may be required.

Lapetus further objects to the Request because it conflicts with Coventry's prior demand that Lapetus not produce any documents that are subject to the confidentiality provisions of Lapetus' Professional Services Agreement with Coventry. Lapetus may be placed in legal jeopardy by producing responsive documents that Coventry later deems were supposed to be kept confidential.

Without waiving the foregoing objections, Lapetus states that responsive documents are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

***5. All Documents and Communications Concerning Jay Jackson's role with Abacus or Lapetus, including as a director of Lapetus.***

**RESPONSE**:

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning" Jay Jackson's role with Abacus or Lapetus," which under the Defendant's vague and overbroad definition of the term "concerning," that includes undefined and terms and phrases including, without limitation "connected with," "bearing upon," and "touching upon" could be read to encompass literally every document in the possession of Lapetus that implicates its business or the life settlement industry in which Jay Jackson ("Jackson") and Abacus are major participants. The request is further objectionable as vague in that the term "role" is undefined and capable of various interpretations. Lapetus therefore reasonably interprets the request to mean "all documents and communications that expressly state or identify Jay Jackson and expressly discuss the contractual terms of any then existing employment or director position with either Abacus or Lapetus."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that expressly state or identify Jay Jackson and expressly discuss the contractual terms of any then existing employment or director position with either Abacus or Lapetus," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. Any such documents or communications of Lapetus have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus

manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request, even as reasonably interpreted, is further unduly burdensome and disproportionate to the needs of this case as it would require Lapetus, a non-party in this proceeding, (i) to literally review each of the hundreds of thousands of documents and communications in its possession, custody or control, in order to identify those that expressly state or identify Jackson, and expressly mention the contractual terms of any then existing employment or director position with either Abacus or Lapetus.

The Request is further unduly burdensome in that it imposes a burden upon a non-party that can easily be satisfied by first seeking the requested information from a party to

this action—which Defendants have neglected to do. Any documents or communications between Lapetus and Jackson can easily be obtained from Abacus. Even there was to be a determination that certain Lapetus documents or communications are related to the claims in this action, the Request will still be unduly burdensome because they can first be sought from Abacus. It is unduly burdensome to impose upon a non-party a requirement to produce what is necessarily in the possession, custody or control of a party to this action without at least first seeking the documents from the party—much less to the magnitude requested here.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial information. By way of example, and without limitation, the Request, even as reasonably interpreted, would require Lapetus to produce all of the approximately 10,000 life expectancy reports produced by Lapetus for Abacus over approximately the past decade. The Request would not only require Lapetus to produce its proprietary life expectancy reports themselves, but also all of Lapetus' related internal documentation and work product, all of which would disclose Lapetus' proprietary processes, methodologies, data and trade secrets. The Request would further require Lapetus to disclose communications with Abacus in which Lapetus provided opinions and memoranda which constitute Lapetus' confidential and proprietary commercial information. Disclosure of Lapetus' trade secrets and confidential information to Defendants—who are in the very same industry life settlements industry—would cause significant and irreparable competitive

harm to Lapetus because it could be used by Defendants to reverse engineer Lapetus' proprietary processes to compete with or otherwise harm Lapetus' financial interests.

Lapetus further objects to this Request because it demands production of Abacus' confidential information that is restricted from disclosure under Lapetus' Professional Services Agreement with Abacus. The documents and communications that are the subject of this Request contain not only Lapetus' own proprietary and confidential data, but also the confidential information of Abacus. Lapetus' production of Abacus' confidential information would cause it to breach the very same confidentiality obligations that the Defendants have demanded Lapetus honor as to their own Professional Services Agreement with Lapetus.

Lapetus further objects to this Request because it demands production of information constituting "protected health information" as defined in 45 C.F.R. § 160.103, for approximately 10,000 individuals whose health information was provided by Abacus in connection with Lapetus' preparation of a life expectancy report or other opinion for Abacus. Beyond being entirely irrelevant to the claims in this action, disclosure of these patients' private health information is precluded by the Health Information Portability and Accountability Act of 1996 ("HIPAA"), as amended, and regulations promulgated thereunder.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly

limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Compliance with the Request would require a physical review of the entirety of Lapetus' documents to determine which mention Abacus, along with a review of every communication Lapetus ever had with Abacus over a decade—totaling hundreds of thousands of pages—the cost of which could easily exceed $100,000 in the aggregate for internal, third-party e-discovery vendor and legal expenses, including attorney review for confidentiality and privilege. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Lapetus further objects to the Request to the extent that it requires the production of documents or communication subject to the attorney-client or work product privileges. Until the Court establishes the appropriate scope of production (if any) in response to this Request, it is not possible for Lapetus to conduct the necessary privilege review and produce any privilege log that may be required.

Without waiving the foregoing objections, Lapetus states that responsive documents are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

***6. All Documents and Communications Concerning the Life Insurance***

***Settlement Association Conference, including presentations or statements made at the conference and any preparatory materials regarding the presentations or statements made at the conference.***

**RESPONSE**:

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning or the Life Insurance Settlement Association Conference," (the "LISA Conference") which under the Defendant's vague and overbroad definition of the term "concerning," that includes undefined and terms and phrases including, without limitation "connected with," "bearing upon," and "touching upon" could be read to encompass literally every document in the possession of Lapetus that implicates its life expectancy services or the life settlement industry, which is the focus of the annual LISA Conference. Lapetus therefore reasonably interprets the request to mean "all documents and communications that expressly state or identify the presentation of Lapetus at the 2024 annual Life Insurance Settlement Association Conference."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that expressly state or identify the presentation of Lapetus at the 2024 annual Life Insurance Settlement Association Conference," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. Any such documents or communications of Lapetus have no bearing upon the falsity or misleading

nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint.

The Request is further unduly burdensome in that it imposes a burden upon a non-party that can easily be satisfied by obtaining the requested information from the public domain—which Defendants have neglected to do. Lapetus' presentation and statements at the 2024 LISA Conference are available on the internet. It is unduly burdensome to impose upon a non-party a requirement to produce what is easily obtainable by going online.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial information. Beyond power-point presentation that was presented publicly by Lapetus at the 2024 LISA Conference, and publicly available video from the 2024 LISA Conference

that contains both it and the related statements by Lapetus, any other documentation or communications concerning Lapetus' assessment of the life settlement industry or its preparation of the 2024 LISA Conference presentation are its confidential commercial information and not subject to disclosure.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Without waiving the foregoing objections, Lapetus states that responsive documents are being withheld on the basis of its objections and that it will produce the Lapetus 2024 LISA Conference power point presentation in response to this Request.

***7. All Documents and Communications Concerning or with any investor or prospective investor in Abacus, including any fund or other entity managed or controlled by Abacus.***

**RESPONSE**:

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning or with any investor or prospective investor in Abacus," which under the Defendant's vague and overbroad definition of the term "concerning," that includes undefined and terms and phrases including, without limitation "connected with," "bearing upon," and "touching upon" could be read to encompass literally every document in the possession of Lapetus that implicates its life expectancy services, for which Abacus has been a significant customer, or the life settlement industry in which Abacus is a major participant—all of which could arguably connected the universe of unknown actual or prospective investors in Abacus. Lapetus further objects to the Request as vague, over broad and unduly burdensome in that it seeks production as to "prospective investors," as the phrase is incapable of any cogent interpretation and Lapetus would have no way of discerning who or who is not a "prospective" investor in Abacus. Lapetus further objects to the Request as vague, over broad and unduly burdensome in that it seeks production as to "investors" which term is subject to various interpretations.

Lapetus therefore reasonably interprets the request to mean "all documents that expressly state or identify a person, other than Lapetus, in favor of whom Abacus has executed a promissory note or who then owned shares of stock in Abacus and expressly mention or discuss the promissory note or stock of Abacus."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that expressly state or identify a person, other than

Lapetus, in favor of whom Abacus has executed a promissory note or who then owned shares of stock in Abacus and expressly mention or discuss the promissory note or stock of Abacus," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. Any such documents or communications have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint. The Request, even as reasonably interpreted, would require the production of hundreds of thousands of pages documents and communications that have no bearing on this case.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request, even as reasonably interpreted, is further unduly burdensome and disproportionate to the needs of this case as it would require Lapetus, a non-party in this proceeding to literally review each of the hundreds of thousands of documents and communications in its possession, custody or control, in order to even identify those that expressly state or identify a person, other than Lapetus, in favor of whom Abacus has executed a promissory note or who then owned shares of stock in Abacus and expressly mention or discuss the promissory note or stock of Abacus.

The Request is further unduly burdensome in that it imposes a burden upon a non-party that can easily be satisfied by first seeking the requested information from a party to this action—which Defendants have neglected to do. Any documents or communications that expressly state or identify a person, other than Lapetus, in favor of whom Abacus has executed a promissory note or who then owned shares of stock in Abacus and expressly mention or discuss the promissory note or stock of Abacus can easily be obtained from Abacus. Even there was to be a determination that certain Lapetus documents or communications are related to the claims in this action, the Request will still be unduly burdensome because they can first be sought from Abacus. It is unduly burdensome to impose upon a non-party a requirement to produce what is necessarily in the possession, custody or control of a party to this action without at least first seeking the documents from the party.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Compliance with the Request would require a physical review of the entirety of Lapetus' documents to determine which mention Abacus, along with a review of every communication Lapetus ever had with Abacus over a decade—totaling hundreds of thousands of pages—the cost of which could easily exceed $100,000 in the aggregate for internal, third-party e-discovery vendor and legal expenses, including attorney review for confidentiality and privilege. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Without waiving the foregoing objections, Lapetus states that is unaware of responsive documents that are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

***8. All Documents and Communications Concerning the accuracy of Lapetus' life expectancy estimates, including analyses, studies, and reviews comparing Lapetus's life expectancy estimates with estimates provided by other providers.***

**RESPONSE**:

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning" the accuracy of Lapetus' life expectancy estimates. The Defendant's vague and overbroad definition of the term "concerning," includes undefined and terms and phrases including, without

limitation "connected with," "bearing upon," and "touching upon" could be read to encompass virtually every document in the possession of Lapetus that implicates its life expectancy services and by definition their accuracy. Lapetus therefore reasonably interprets the request to mean "all documents and communications that expressly identify a specific life expectancy estimate prepared by Lapetus and compare that estimate to the actual lifespan of the individual whose life expectancy was estimated."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that expressly identify a specific life expectancy estimate prepared by Lapetus and compare that estimate to the actual lifespan of the individual whose life expectancy was estimated," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. Any such documents or communications of Lapetus have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi)

Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint. The Request, even as reasonably interpreted, would require the production of thousands, if not tens of thousands, of pages documents and communications that have no bearing on this case.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request, even as reasonably interpreted, is further unduly burdensome and disproportionate to the needs of this case as it would require Lapetus, a non-party in this proceeding, (i) to literally review tens of thousands, if not hundreds of thousands, of documents in its possession, custody or control, in order to even identify those that expressly identify a specific life expectancy estimate prepared by Lapetus and compare that estimate to the actual lifespan of the individual whose life expectancy was estimated, and (ii) assemble, review and produce all of its communications spanning more than a decade to uncover those that expressly identify and a specific life expectancy estimate prepared by Lapetus and compare that estimate to the actual lifespan of the individual whose life expectancy was estimated.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial

information. By way of example, and without limitation, the Request, even as reasonably interpreted, would require Lapetus to produce all of its tens of thousands of life expectancy reports produced by Lapetus over a decade. The Request would not only require Lapetus to produce its proprietary life expectancy reports themselves, but also all of Lapetus' related internal documentation and work product, all of which would disclose Lapetus' proprietary processes, methodologies, data and trade secrets. The Request would further require Lapetus to disclose its distance to death calculations which constitute Lapetus' confidential and proprietary commercial information. Disclosure of Lapetus' trade secrets and confidential information to Defendants—who are in the very same industry life settlements industry—would cause significant and irreparable competitive harm to Lapetus because it could be used by Defendants to reverse engineer Lapetus' proprietary processes to compete with or otherwise harm Lapetus' financial interests.

Lapetus further objects to this Request because it demands production of Abacus' confidential information that is restricted from disclosure under Lapetus' Professional Services Agreement with its customers. The life expectancy reports and communications that would fall under this Request contain not only Lapetus' own proprietary and confidential data, but also the confidential information of its customers. Lapetus' production of this confidential information would cause it to breach the very same confidentiality obligations that the Defendants have demanded Lapetus honor as to their own Professional Services Agreement with Lapetus.

Lapetus further objects to this Request because it demands production of information constituting "protected health information" as defined in 45 C.F.R. § 160.103,

for approximately tens of thousands of individuals whose health information was provided by a Lapetus customer in connection with Lapetus' preparation of a life expectancy report or other opinion for the customer. Beyond being entirely irrelevant to the claims in this action, disclosure of these patients' private health information is precluded by the Health Information Portability and Accountability Act of 1996 ("HIPAA"), as amended, and regulations promulgated thereunder.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Compliance with the Request would require a physical review of the entirety of Lapetus' documents to determine which that expressly identify a specific life expectancy estimate prepared by Lapetus and compare that estimate to the actual lifespan of the individual whose life expectancy was estimated, along with a review of every internal and external communication Lapetus ever had—totaling hundreds of thousands of pages—the cost of which could easily exceed $100,000 in the aggregate for internal, third-party e-discovery vendor and legal expenses, including attorney review for confidentiality and privilege. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should

be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Lapetus further objects to the Request to the extent that it requires the production of documents or communication subject to the attorney-client or work product privileges. Until the Court establishes the appropriate scope of production (if any) in response to this Request, it is not possible for Lapetus to conduct the necessary privilege review and produce any privilege log that may be required.

Lapetus further objects to the Request as an improper attempt to avoid discovery limitations in the currently pending state court action *Lapetus Solutions, Inc. v. Florida Office of Insurance Regulation*, Case No. 2025-CA-516 pending in the Circuit Court of the Second Judicial County in and for Leon County, Florida (the "State Court Case"), in which Coventry has intervened as party defendant. Defendants should not be permitted to obtain as discovery in this matter documents that it cannot rightfully obtain in the State Court Case.

Lapetus further objects to the Request as unduly burdensome to the extent Defendants seek the third party "analysis" prepared by Morpheus Research that is identified in the Complaint, as the same is publicly available.

Without waiving the foregoing objections, Lapetus states that responsive documents are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

***9. All Documents and Communications Concerning any criticisms or questioning of Lapetus's life expectancy estimates.***

**RESPONSE**:

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning" any criticisms or questioning of Lapetus' life expectancy estimates. The Defendant's vague and overbroad definition of the term "concerning," includes undefined and terms and phrases including, without limitation "connected with," "bearing upon," and "touching upon" could be read to encompass virtually every document in the possession of Lapetus that implicates its life expectancy services and by definition their accuracy. The Request is further objectionable as vague in that the term "criticism" could mean any comment concerning any of Lapetus' life expectancy estimates—whether positive, negative, indifferent or otherwise. The Request is further objectionable as vague in that the term "questioning" is subject to various interpretations. Lapetus therefore reasonably interprets the request to mean "all documents and communications that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. Any such documents have no bearing

upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request, even as reasonably interpreted, is further unduly burdensome and disproportionate to the needs of this case as it would require Lapetus, a non-party in this proceeding, (i) to literally review tens of thousands, if not hundreds of thousands, of documents in its possession, custody or control, in order to even identify those that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the

individual, and (ii) assemble, review and produce all of its communications spanning more than a decade to uncover those that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial information. The Request, even as reasonably interpreted, would require Lapetus to produce documents that are the confidential commercial information of Lapetus to the extent any even exist. Disclosure of such confidential information of Lapetus to Defendants—if any even exist—would cause significant and irreparable competitive harm to Lapetus because it would disclose Lapetus' internal communications with customers and would unnecessarily negatively impact Lapetus' reputation without Lapetus being able to present the same in context and provide an appropriate explanation or rebuttal.

Lapetus further objects to this Request because it demands production of Abacus' confidential information that is restricted from disclosure under Lapetus' Professional Services Agreement with its customers. Any documents or communications that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual would not only be Lapetus' own confidential commercial information, but also the confidential information of the respective customer. Lapetus' production of this confidential information would cause it to breach the very same confidentiality obligations

that the Defendants have demanded Lapetus honor as to their own Professional Services Agreement with Lapetus.

Lapetus further objects to this Request because it demands production of information, which if it existed, would constitute the "protected health information" as defined in 45 C.F.R. § 160.103, for individuals whose health information was provided by the Lapetus customer made the negative statement of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual. Beyond being entirely irrelevant to the claims in this action, disclosure of these patients' private health information is precluded by the Health Information Portability and Accountability Act of 1996 ("HIPAA"), as amended, and regulations promulgated thereunder.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Compliance with the Request would require a physical review of the entirety of Lapetus' documents to determine any that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of

the individual, along with a review of every internal and external communication Lapetus ever had—totaling hundreds of thousands of pages—the cost of which could easily exceed $100,000 in the aggregate for internal, third-party e-discovery vendor and legal expenses, including attorney review for confidentiality and privilege. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Lapetus further objects to the Request to the extent that it requires the production of documents or communication subject to the attorney-client or work product privileges. Until the Court establishes the appropriate scope of production (if any) in response to this Request, it is not possible for Lapetus to conduct the necessary privilege review and produce any privilege log that may be required.

Without waiving the foregoing objections, Lapetus states that is unaware of responsive documents that are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

***10. All Documents and Communications Concerning any complaints Lapetus received Concerning its life expectancy estimates.***

**RESPONSE**:

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning" any complaints Lapetus received "concerning" Lapetus' life expectancy estimates. The Defendant's vague and overbroad definition of the term "concerning," includes undefined and terms and

phrases including, without limitation "connected with," "bearing upon," and "touching upon" could be read to encompass virtually every document in the possession of Lapetus that implicates any "complaint." The Request is further objectionable as vague in that the term "complaint" is subject to various interpretations. Lapetus therefore reasonably interprets the request to mean "all documents and communications that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "all documents and communications that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. Any such documents have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in

its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request, even as reasonably interpreted, is further unduly burdensome and disproportionate to the needs of this case as it would require Lapetus, a non-party in this proceeding, (i) to literally review tens of thousands, if not hundreds of thousands, of documents in its possession, custody or control, in order to even identify those that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual, and (ii) assemble, review and produce all of its communications spanning more than a decade to uncover those that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial information. The Request, even as reasonably interpreted, would require Lapetus to

produce documents that are the confidential commercial information of Lapetus to the extent any even exist. Disclosure of such confidential information of Lapetus to Defendants—if any even exist—would cause significant and irreparable competitive harm to Lapetus because it would disclose Lapetus' internal communications with customers and would unnecessarily negatively impact Lapetus' reputation without Lapetus being able to present the same in context and provide an appropriate explanation or rebuttal.

Lapetus further objects to this Request because it demands production of Abacus' confidential information that is restricted from disclosure under Lapetus' Professional Services Agreement with its customers. Any documents or communications that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual would not only be Lapetus' own confidential commercial information, but also the confidential information of the respective customer. Lapetus' production of this confidential information would cause it to breach the very same confidentiality obligations that the Defendants have demanded Lapetus honor as to their own Professional Services Agreement with Lapetus.

Lapetus further objects to this Request because it demands production of information, which if it existed, would constitute the "protected health information" as defined in 45 C.F.R. § 160.103, for individuals whose health information was provided by the Lapetus customer made the negative statement of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual. Beyond being entirely irrelevant to the claims in this action,

disclosure of these patients' private health information is precluded by the Health Information Portability and Accountability Act of 1996 ("HIPAA"), as amended, and regulations promulgated thereunder.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Compliance with the Request would require a physical review of the entirety of Lapetus' documents to determine any that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual, along with a review of every internal and external communication Lapetus ever had—totaling hundreds of thousands of pages—the cost of which could easily exceed $100,000 in the aggregate for internal, third-party e-discovery vendor and legal expenses, including attorney review for confidentiality and privilege. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Lapetus further objects to the Request to the extent that it requires the production of documents or communication subject to the attorney-client or work product privileges. Until the Court establishes the appropriate scope of production (if any) in response to this Request, it is not possible for Lapetus to conduct the necessary privilege review and produce any privilege log that may be required.

Without waiving the foregoing objections, Lapetus states that is unaware of responsive documents that are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

***11. All Documents and Communications Concerning Lapetus' life expectancy calculations, estimations, projections, medical underwriting, actual-to-expected analyses, reconciliation reports, or methodologies related to Abacus, including all data related thereto.***

**RESPONSE**:

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning" Lapetus' life expectancy calculations, estimations, projections, medical underwriting, actual-to-expected analyses, reconciliation reports, or methodologies related to Abacus, including all data related thereto. The Defendant's vague and overbroad definition of the term "concerning," includes undefined and terms and phrases including, without limitation "connected with," "bearing upon," and "touching upon" could be read to encompass virtually every document in the possession of Lapetus that implicates any life expectancy services for Abacus, or the life settlement industry in which Abacus is a major participant.

Lapetus therefore reasonably interprets the request to mean "all documents that expressly state or identify Abacus and any communications between Lapetus and Abacus."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that expressly state or identify Abacus and any communications between Lapetus and Abacus," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. The documents of Lapetus and communications between Lapetus and Abacus have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint. The Request, even as reasonably

interpreted, would require the production of hundreds of thousands of pages documents and communications that have no bearing on this case.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request, even as reasonably interpreted, is further unduly burdensome and disproportionate to the needs of this case as it would require Lapetus, a non-party in this proceeding, (i) to literally review each of the hundreds of thousands of documents in its possession, custody or control, in order to even identify those that expressly state or identify Abacus, and (ii) assemble, review and produce all of its communications with Abacus that span approximately a decade.

The Request is further unduly burdensome in that it imposes a burden upon a non-party that can easily be satisfied by first seeking the requested information from a party to this action—which Defendants have neglected to do. Any documents or communications between Lapetus and Abacus can easily be obtained from Abacus. Even there was to be a determination that certain Lapetus documents or communications are related to the claims in this action, the Request will still be unduly burdensome because they can first be sought from Abacus. It is unduly burdensome to impose upon a non-party a requirement to produce what is necessarily in the possession, custody or control of a party to this action without at least first seeking the documents from the party—much less to the magnitude requested here.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial information. By way of example, and without limitation, the Request, even as reasonably interpreted, would require Lapetus to produce all of the approximately 10,000 life expectancy reports produced by Lapetus for Abacus over approximately the past decade. The Request would not only require Lapetus to produce its proprietary life expectancy reports themselves, but also all of Lapetus' related internal documentation and work product, all of which would disclose Lapetus' proprietary processes, methodologies, data and trade secrets. The Request would further require Lapetus to disclose communications with Abacus in which Lapetus provided opinions and memoranda which constitute Lapetus' confidential and proprietary commercial information. Disclosure of Lapetus' trade secrets and confidential information to Defendants—who are in the very same industry life settlements industry—would cause significant and irreparable competitive harm to Lapetus because it could be used by Defendants to reverse engineer Lapetus' proprietary processes to compete with or otherwise harm Lapetus' financial interests.

Lapetus further objects to this Request because it demands production of Abacus' confidential information that is restricted from disclosure under Lapetus' Professional Services Agreement with Abacus. The documents and communications that are the subject of this Request contain not only Lapetus' own proprietary and confidential data, but also the confidential information of Abacus. Lapetus' production of Abacus' confidential information would cause it to breach the very same confidentiality obligations that the

Defendants have demanded Lapetus honor as to their own Professional Services Agreement with Lapetus.

Lapetus further objects to this Request because it demands production of information constituting "protected health information" as defined in 45 C.F.R. § 160.103, for approximately 10,000 individuals whose health information was provided by Abacus in connection with Lapetus' preparation of a life expectancy report or other opinion for Abacus. Beyond being entirely irrelevant to the claims in this action, disclosure of these patients' private health information is precluded by the Health Information Portability and Accountability Act of 1996 ("HIPAA"), as amended, and regulations promulgated thereunder.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Compliance with the Request would require a physical review of the entirety of Lapetus' documents to determine which mention Abacus, along with a review of every communication Lapetus ever had with Abacus over a decade—totaling hundreds of thousands of pages—the cost of which could easily exceed $100,000 in the aggregate for internal, third-party e-discovery vendor and

legal expenses, including attorney review for confidentiality and privilege. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Lapetus further objects to the Request to the extent that it requires the production of documents or communication subject to the attorney-client or work product privileges. Until the Court establishes the appropriate scope of production (if any) in response to this Request, it is not possible for Lapetus to conduct the necessary privilege review and produce any privilege log that may be required.

Lapetus further objects to the Request as an improper attempt to avoid discovery limitations in the currently pending state court action *Lapetus Solutions, Inc. v. Florida Office of Insurance Regulation*, Case No. 2025-CA-516 pending in the Circuit Court of the Second Judicial County in and for Leon County, Florida (the "State Court Case"), in which Coventry has intervened as party defendant. Defendants should not be permitted to obtain as discovery in this matter documents that it cannot rightfully obtain in the State Court Case.

Without waiving the foregoing objections, Lapetus states that responsive documents are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

***12. All Documents and Communications Concerning press releases, website postings, conference presentations, and public remarks referencing or Concerning Abacus, Coventry, Lapetus' life expectancy estimates, or the valuation of life settlements.***

**RESPONSE**:

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning" press releases, website, conference presentations, and public remarks referencing or "concerning" Abacus, Coventry, Lapetus' life expectancy estimates, or the valuation of life settlement. The Defendant's vague and overbroad definition of the term "concerning," that includes undefined and terms and phrases including, without limitation "connected with," "bearing upon," and "touching upon" could be read to encompass literally every document in the possession of Lapetus. The Request is further objectionable as vague in that the term "public remark" is subject to varying interpretations and could mean, among other things, any remark made Lapetus to any person outside of Lapetus, and/or any remark by anyone on the planet other than Lapetus. Lapetus therefore reasonably interprets the request to mean "all documents and communications that contain a statement by a person other than Lapetus that is contained in a press release, website, conference presentation, periodical publication or newspaper that expressly identifies any of Abacus, Coventry, a life expectancy report of Lapetus or the valuation of life settlements."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that contain a statement by a person other than Lapetus that is contained in a press release, website, conference presentation, periodical publication or newspaper that expressly identifies any of Abacus, Coventry, a life expectancy report of Lapetus or the valuation of life settlements," is not reasonably tethered to any claims

asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. The such documents no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request is further unduly burdensome in that it imposes a burden upon a non-party that can necessarily be satisfied by obtaining the requested information from the public domain—which Defendants have neglected to do. It is unduly burdensome to

impose upon a non-party a requirement to produce what is easily obtainable by going online.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Without waiving the foregoing objections, Lapetus states that responsive documents are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

***13. All Documents and Communications Concerning Lapetus' decision to end operations on August 31, 2025.***

**RESPONSE:**

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning" an assumed "decision to end operations on August 31, 2025." Lapetus therefore reasonably interprets the request to mean "all documents and communications that evidence the decision of Lapetus' board of directors to voluntary dissolve Lapetus as an entity."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that evidence the decision of Lapetus' board of directors

to voluntary dissolve Lapetus as an entity," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. Any such documents of Lapetus have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint. The Request, even as reasonably interpreted, would require the production of hundreds of thousands of pages documents and communications that have no bearing on this case.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial information. The Request would require Lapetus to produce its internal documentation and communications evidencing a monumental and intimately private corporate decision that if made has not been revealed to the public. Disclosure of Lapetus' confidential information to Defendants—who are in the very same industry life settlements industry—would cause significant and irreparable competitive harm to Lapetus because it would prematurely make public its internal decision to voluntarily dissolve and necessarily harm Lapetus' value in seeking to maximize its value in connection with any dissolution, including without limitation any liquidation of its assets prior to dissolution.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. Should the Court require any production in response to this Request, the cost should be shifted to Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Lapetus further objects to the Request to the extent that it requires the production of documents or communication subject to the attorney-client or work product privileges.

Until the Court establishes the appropriate scope of production (if any) in response to this Request, it is not possible for Lapetus to conduct the necessary privilege review and produce any privilege log that may be required.

Without waiving the foregoing objections, Lapetus states that it has no documents in its possession, custody or control responsive to the Request and therefore will produce none.

***14. All Documents and Communications Concerning any "pressure from some clients to raise or lower" life expectancies, including any such pressure from Abacus, and any resulting reassessments by Lapetus.***

**RESPONSE:**

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning" any "pressure from some clients to raise or lower" life expectancies, which phrase is uncertain and subject to varying interpretations. Lapetus therefore reasonably interprets the request to mean "all documents and communications that contain a express statement by a customer of Lapetus to change a life expectancy estimate prepared by Lapetus for the customer."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all" documents and communications "that contain an express statement by a customer of Lapetus requesting Lapetus to change a life expectancy estimate prepared by Lapetus for the customer," is not reasonably tethered to any claims asserted by Abacus in the instant

proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. Any such documents have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

The Request, even as reasonably interpreted, is further unduly burdensome and disproportionate to the needs of this case as it would require Lapetus, a non-party in this proceeding, (i) to literally review tens of thousands, if not hundreds of thousands, of documents in its possession, custody or control, in order to even identify those that contain

an express statement by a customer of Lapetus requesting Lapetus to change a life expectancy estimate prepared by Lapetus for the customer, and (ii) assemble, review and produce all of its communications spanning more than a decade to uncover those that contain an express statement by a customer of Lapetus requesting Lapetus to change a life expectancy estimate prepared by Lapetus for the customer.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial information. The Request, even as reasonably interpreted, would require Lapetus to produce documents that are the confidential commercial information of Lapetus to the extent any even exist. Disclosure of such confidential information of Lapetus to Defendants—if any even exist—would cause significant and irreparable competitive harm to Lapetus because it would disclose Lapetus' internal communications with customers and would unnecessarily negatively impact Lapetus' reputation without Lapetus being able to present the same in context and provide an appropriate explanation or rebuttal.

Lapetus further objects to this Request because it demands production of Abacus' confidential information that is restricted from disclosure under Lapetus' Professional Services Agreement with its customers. Any documents or communications that contain a negative statement by a customer of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual would not only be Lapetus' own confidential commercial information, but also the confidential information of the respective customer. Lapetus' production of this confidential information would cause it to breach the very same confidentiality obligations

that the Defendants have demanded Lapetus honor as to their own Professional Services Agreement with Lapetus.

Lapetus further objects to this Request as unduly burdensome as it pertains to such statements by Coventry, as it requires the production of documents that are necessarily in the possession of Coventry

Lapetus further objects to this Request because it demands production of information, which if it existed, would constitute the "protected health information" as defined in 45 C.F.R. § 160.103, for individuals whose health information was provided by the Lapetus customer made the negative statement of Lapetus due to a specific life expectancy estimate prepared by Lapetus for the customer having deviated from the actual lifespan of the individual. Beyond being entirely irrelevant to the claims in this action, disclosure of these patients' private health information is precluded by the Health Information Portability and Accountability Act of 1996 ("HIPAA"), as amended, and regulations promulgated thereunder.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. The cost of any production should be shifted to the Defendants. Compliance with the Request would

require a physical review of the entirety of Lapetus' documents to determine any that contain an express statement by a customer of Lapetus requesting Lapetus to change a life expectancy estimate prepared by Lapetus for the customer, along with a review of every internal and external communication Lapetus ever had—totaling hundreds of thousands of pages—the cost of which could easily exceed $100,000 in the aggregate for internal, third-party e-discovery vendor and legal expenses, including attorney review for confidentiality and privilege. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Without waiving the foregoing objections, Lapetus states that is unaware of responsive documents that are being withheld on the basis of its objections other than statements made by Coventry and that it will produce no documents responsive to this Request.

***15. All Documents and Communications Concerning audits of life expectancies required to be filed with the Office of Insurance Regulation pursuant to Section 626.99175(g)(5) of the Florida Statutes, including final submissions, drafts, and any Documents used to generate such audits.***

**RESPONSE**:

Lapetus objects to this Request as vague, overbroad and unduly burdensome in that it seeks the production of all documents and communications "concerning" audits of life expectancies required to be filed with the Office of Insurance Regulation pursuant to Section 626.99175(g)(5) of the Florida Statutes. The Defendant's vague and overbroad

definition of the term "concerning," includes undefined and terms and phrases including, without limitation "connected with," "bearing upon," and "touching upon" could be read to encompass virtually every document in the possession of Lapetus that implicates any life expectancy services for its customers, or the life settlement industry generally. Lapetus therefore reasonably interprets the request to mean "all audits of life expectancies required to be filed with the Office of Insurance Regulation pursuant to Section 626.99175(g)(5) of the Florida Statutes."

Lapetus objects to the Request as reasonably interpreted as irrelevant, overbroad, unduly burdensome and disproportionate to the needs of this case. The request for "all audits of life expectancies required to be filed with the Office of Insurance Regulation pursuant to Section 626.99175(g)(5) of the Florida Statutes," is not reasonably tethered to any claims asserted by Abacus in the instant proceeding. *See Amended Complaint of Abacus (Doc. No. 38) (the "Amended Complaint")*. The audits of Lapetus required to be filed with the Office of Insurance Regulation pursuant to Section 626.99175(g)(5) of the Florida Statutes have no bearing upon the falsity or misleading nature of Defendants' statements that Abacus alleges in the Amended Complaint are defamatory or otherwise injurious, i.e. that (i) Abacus manufactures its earnings, (ii) Abacus equity holders are subordinated to debt backed by life insurance policies, (iii) no companies other than Abacus utilize the services of Lapetus, (iv) Abacus improperly changes its accounting methods, (v) Abacus is about to implode, (vi) Abacus' fair market value is grossly overstated, (vii) Abacus uses life expectancy reports prepared by Lapetus to value Abacus' assets on its own balance sheet, (viii) engages in dishonest accounting, (ix) Abacus' lies in

its annual report, (x) that Abacus lied when it stated Lapetus produces the most conservative reports in the life settlements industry, (xi) Abacus will go bankrupt, (xii) Abacus does not fairly value its assets, (xiii) Abacus improperly reports unrealized gains, and (xiii) Abacus engages in stock manipulation. *See Amended Complaint at* ¶¶ 199, 214, 230, 241. There is no affirmative defense to which the Request could possibly relate, as Defendants have not answered the Amended Complaint. The Request, even as reasonably interpreted, would require the production of thousands, if not tens of thousands, of pages documents and communications that have no bearing on this case.

The Request is further objectionable as the timeframe of January 1, 2022, through the present is overbroad and unduly burdensome, far exceeds the timeframe applicable to Defendants' March 2025 statements that are at issue in the Amended Complaint.

Lapetus further objects to this Request on the grounds that it seeks Lapetus' proprietary trade secrets and other confidential research, development and commercial information. By way of example, and without limitation, the Request, even as reasonably interpreted, would require Lapetus to produce all of the audits required to be filed with the Office of Insurance Regulation pursuant to Section 626.99175(g)(5) of the Florida Statutes by Lapetus for Abacus over more than a decade. The Request would not only require Lapetus to produce its proprietary life expectancy reports themselves, but also all of Lapetus' related internal documentation and work product, all of which would disclose Lapetus' proprietary processes, methodologies, data and trade secrets. The Request would further require Lapetus to disclose communications which contain and constitute Lapetus' confidential and proprietary commercial information. Disclosure of Lapetus' trade secrets

and confidential information to Defendants—who are in the very same industry life settlements industry—would cause significant and irreparable competitive harm to Lapetus because it could be used by Defendants to reverse engineer Lapetus' proprietary processes to compete with or otherwise harm Lapetus' financial interests.

Lapetus further objects to this Request because it demands production of Abacus' confidential information that is restricted from disclosure under Lapetus' Professional Services Agreement with Abacus. The documents and communications that are the subject of this Request contain not only Lapetus' own proprietary and confidential data, but also the confidential information of Abacus. Lapetus' production of Abacus' confidential information would cause it to breach the very same confidentiality obligations that the Defendants have demanded Lapetus honor as to their own Professional Services Agreement with Lapetus.

Lapetus further objects to this Request because it demands production of information constituting "protected health information" as defined in 45 C.F.R. § 160.103, for approximately thousands of individuals whose health information was provided by a customer of Lapetus in connection with Lapetus' preparation of the life expectancy report filed with the relevant audit. Beyond being entirely irrelevant to the claims in this action, disclosure of these patients' private health information is precluded by the Health Information Portability and Accountability Act of 1996 ("HIPAA"), as amended, and regulations promulgated thereunder.

If the Court requires any production is required by Lapetus in response to this Request, it must be narrowly tailored to the needs of this case and further be conditioned

upon a confidentiality order enforceable by the Court that will, among other things, strictly limit the review and disclosure of any documents produced to an "attorneys' eyes only" level of restriction in order to protect Lapetus' viable commercial interests.

Lapetus further objects to the Request as unduly burdensome because it imposes an undue financial burden on Lapetus, who is not a party in this action. Should the Court require any production in response to this Request, the cost should be borne by Defendants, and Defendants should be required to advance the reasonably estimated cost of compliance before production is undertaken by Lapetus.

Lapetus further objects to the Request to the extent that it requires the production of documents or communication subject to the attorney-client or work product privileges. Until the Court establishes the appropriate scope of production (if any) in response to this Request, it is not possible for Lapetus to conduct the necessary privilege review and produce any privilege log that may be required.

Lapetus further objects to the Request as an improper attempt to avoid discovery limitations in the currently pending state court action *Lapetus Solutions, Inc. v. Florida Office of Insurance Regulation*, Case No. 2025-CA-516 pending in the Circuit Court of the Second Judicial County in and for Leon County, Florida (the "State Court Case"), in which Coventry has intervened as party defendant. Defendants should not be permitted to obtain as discovery in this matter documents that it cannot rightfully obtain in the State Court Case.

Without waiving the foregoing objections, Lapetus states that responsive documents are being withheld on the basis of its objections and that it will produce no documents responsive to this Request.

Date: September 26, 2025. Respectfully submitted,

*/s/Paul N. Mascia*
Paul N. Mascia, Esq.
Florida Bar No. 0489670
Michael A. Nardella, Esq.
Florida Bar No. 051265
**Nardella & Nardella, PLLC**
135 W. Central Blvd., Ste. 300
Orlando, Florida 32801
Phone: (407) 966-2680
Facsimile: (407) 966-2681
Email: pmascia@nardellalaw.com
Email: mnardella@nardellalaw.com
Secondary email: rsanchez@nardellalaw.com

*Counsel for Lapetus Solutions, Inc.*

**CERTIFICATE OF SERVICE**

Lapetus Solutions, Inc., by and through undersigned counsel, certifies that on September 26, 2025, a true and correct copy of the foregoing has been served on counsel Defendants via email to the email addresses set out in the Service List below.

**SERVICE LIST**

Alfred J. Bennington, Jr.
Glennys Ortega Rubin
Benjamin Elliott,
SHUTTS & BOWEN LLP
300 South Orange Ave.
Suite 1600
Orlando, FL 32801
Telephone: (407) 423-3200
Facsimile: (407) 425-8316
bbenington@shutts.com
grubin@shutts.com
belliott@shutts.com

Andrew Levander (pro hac vice)
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
andrew.levander@dechert.com

*/s/ Paul N. Mascia*
Paul N. Mascia, Esq.