# EXHIBIT "B"

NARDELLA

Phone: 407 966 2680
Fax: 407 966 2681
pmascia@nardellalaw.com

December 3, 2025

**VIA EMAIL ONLY:**
Michael.McGinley@dechert.com

Michael McGinley, Esq.
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808

***Re: Abacus Global Management, Inc. ("Abacus") v. Coventry First, LLC et al., Case No. 25-cv-01401 (M.D. Fla. 2025) (the "Litigation")- Lapetus Solutions, Inc. Response to Third Party Subpoena dated August 29, 2025 (the "Subpoena")***

Dear Michael:

As you are aware, we represent Lapetus Solutions, Inc. ("Lapetus"), concerning the Subpoena issued by defendants Coventry First, LLC, and Alan Buerger (together "Defendants") in the above referenced Litigation. This letter is in response your letter dated October 20, 2025 (the "First Letter"), our meet and confer on October 31, 2025 (the "Initial Call"), your ensuing letter dated November 19, 2025 (the "Second Letter" and referred to together with the First Letter as the "Letters").

This letter response will serve as Lapetus' supplement and amendment to its previously timely served *Responses and Objections to Defendants' Subpoena* dated September 26, 2025 (the "Initial Objections") and will govern to the extent of any inconsistency with the Initial Objections.

Lapetus has engaged in a good faith dialogue with Defendants to address its objections to the Subpoena. Subject to and without waiving any of its objections, and in otherwise in accordance with the terms of this letter, Lapetus will commence its production of documents responsive to Defendants' non-objectionable requests as set forth below, and on a rolling basis, on or before December 17, 2025.

***<u>Relevance Generally</u>***

As an initial matter, the Second Letter is not accurate in stating that I articulated Lapetus' "main concern" is being the "relevance threshold." While we did discuss relevance issues at length during the Initial Call, it is not the necessarily the "main" concern of Lapteus—but rather one of its many valid objections.

Lapetus disputes Defendants' assessment of Abacus's bases for the causes of action brought by Abacus in the Litigation, as set forth in Abacus' pending *First Amended Complaint* (Dkt. No. 38) (the "Complaint") and further articulated in Abacus' Response in Opposition to Defendants' Motion to Dismiss (Dkt. No. 51) (the "MTD Response").

Abacus has sued Defendants for specific defamatory statements made by Defendants "***about Abacus***" that concern:

- Abacus' supposed dishonest inflation of its enterprise value ***due to Abacus' purported use of Lapetus' life expectancy reports to value its assets***;
- Abacus' alleged manipulation of its financial statements to generate unrealized gains that inaccurately reflected its true earnings ***due to Abacus' purported use of Lapetus' life expectancy reports to value its assets***;
- Abacus' alleged securities law and state law violations;
- ***Abacus'*** alleged use of asset back debt;
- ***Abacus' resemblance*** to another public life settlements company that failed; and
- Other ***business practices of Abacus***.

*See Complaint* at Count I (Defamation) ¶¶ 193 – 207, 198, 199; Count II (Defamation by Implication) ¶¶ 208 – 223, 212, 213; Count III (Defamation *Per Se*) ¶¶ 224 – 238, 229, 230.

Abacas also brings a claim under the Florida Deceptive and Unfair and Practices Act ("FDUTPA") by alleging that these same false and defamatory statements constitute the "unfair trade or practice" for its FDUTPA claim. *See Complaint* at Count IV (FDUTPA) ¶¶ 239 - 245; *MTD Response* at 21 – 22. Finally, Abacus brings a tortious interference claim that does not implicate Lapetus. *See Complaint* at Count V (Tortious Interference with Business Relations) ¶¶ 246 – 253.

Defendants contend that the ***accuracy*** (or inaccuracy) of Lapetus' life expectancy report (a "LE") is relevant to Abacus' defamation and FDUTPA claims. In the Second Letter, Defendants point to

the many times that Lapetus appears in the general allegations of Abacus' Complaint, and quote Paragraph 6 of the Complaint which provides in relevant part:

> *Defendants core claim is that Lapetus life expectancies are too short,* ***and that Abacus relies on those estimates to intentionally overvalue the policies it buys and sells.*** (emphasis added).

Defendants take this sentence and the ensuing general allegation at paragraph 7(a) out of context and entirely misses the that real crux of Abacus' defamation and FDUTPA claims do not center on the ***accuracy*** (or inaccuracy) of Lapetus' LEs—but rather Defendants' defamatory claim that ***Abacus uses*** Lapetus' LEs to (over)value its assets and engineer fictitious unrealized gains. Simply put, the accuracy (or inaccuracy) of Lapetus' LEs have no relevance to Abacus' claims.

To the extent Defendants have missed the central thrust Abacus' claims by their reading of the Amended Complaint, Abacus' MTD Response puts to rest any doubt. None of the Defendants' defamatory statements complained of by Abacus have anything to do with ***the accuracy*** of Lapetus' LEs. They instead have to do with ***Abacus' own alleged use*** of the Lapetus LEs—which Abacus refutes by explaining that it does not use Lapetus LEs in valuing its assets or pricing its policies for sale on the tertiary market. *See MTD Response*. Accordingly, Lapetus maintains its relevance objections.

***<u>Other Issues Raised in the Letters</u>***

Defendants' First Letter asserted that Lapetus has failed to exercise "reasonable efforts" to locate and produce all documents in its possession in order to comply with each unobjectionable request. Defendants do not reiterate this concern in the Second Letter. To the extent that Defendants maintain this assertion after the Initial Call, Lapetus disputes the same. Lapetus will continue to fulfil its obligations under the Federal Rules by undertaking reasonable efforts to locate and produce documents in its possession, custody or control, in order to comply with each unobjectionable request, and in conformity with Lapetus' good faith efforts to to resolve its objections meeting and conferring with Defendants.

Lapetus further asserts that as to unobjectionable request, it need only exercise "reasonable efforts" to locate and produce such nonprivileged documents as are in its "possession, custody or control" to comply with Federal Rule 45. Defendants asserted in the First Letter that Lapetus must additionally produce documents in its "constructive possession"—which it appeared to define as documents "to which [Lapetus] has access." Lapetus therefore interprets Defendants' demand to produce applicable case law defines as documents within Lapetus' "control", which extend to documents that Lapetus has "a legal right, authority or practical ability to obtain on demand." *See Selectica, Inc. v. Novatus, Inc*., No. 6:13-cv-1708-Orl40TBS, 2015 U.S. Dist. LEXIS 30460, at *9

(M.D. Fla. Mar. 12, 2015). Defendants appear to demand in the First Letter that Lapetus extend its search to Lapetus former employees, affiliates, subsidiaries and a non-entity branded initiative referenced in one of Abacus's public SEC filings.
Lapetus currently has only one employee. It conducted an exit protocol with former employees to collect any documents pertaining to their work at the time of termination. As such, it is not reasonable to require that Lapetus again undertake efforts to seek documents from former employees in order to comply with the Subpoena. As for subsidiaries or affiliates, Lapetus has none. As for the "partnership" referred to in Abacus' 2024 SEC 10(k) filing as "Lapetus Life Event Solutions," it was merely proposed collaboration that never materialized—not an entity upon which Lapetus may make a demand for responsive documents. In short, Lapetus will comply with its obligations under the Federal Rules. However, neither the rules nor any applicable case law use the phrase "constructive possession" set forth in the First Letter.

Lapetus continues to maintain its overbreadth objection as to the Subpoena's timeframe of January 1, 2022, to the present date. As Defendants observe in the First Letter, Abacus' allegations are as to defamatory statements of Defendants arising "as early as October of 2023." *See Complaint* at ¶ 90. The earliest dates referenced in the Complaint are all in 2023. *See Complaint* at ¶ 89 ("Defendants have been eager for a way to take down Abacus since the Company first went public in June of 2023"); ¶ 153 ("… the reality is that Buerger and Coventry have been working on this dossier since 2023, when Defendants first put Abacus in its crosshairs."). **Accordingly, Lapetus proposes in good faith an alternate timeframe for the Subpoena of January 1, 2023, to the present date.**

Lapetus amends its Initial Objections to the extent it objected to having to produce a "decade" worth of documents. However, even with a few year timeframe as to documents sought under the Subpoena, Lapetus will need to review of "a decade" worth of accumulated documents in order to identify those that would fall within the relevant time frame. Lapetus maintains an undue burden and disproportionality objection to that extent that requests require it to cull through a decade's worth of documents in view of the availability of many documents from the parties themselves, the early stage of the case where a motion to dismiss is pending and the extraordinary cost required to search, review and produce the documents requested. Nonetheless, Lapetus will continue to work with Defendants in a good faith produce documents responsive to unobjectionable requests.

Lapetus exercised good faith effort to reasonably interpret the requests. Progress has been made on this front through the parties meet and confer efforts, as reflected by the narrowing and amending of the Initial Requests in the Second Letter. It appears that Defendants no longer contend that Lapetus has in appropriately "rewritten" requests as stated in the First Letter. Lapetus will continue to interpret Defendants' requests in good faith, reserving its right to object as to those that are vague overbroad, unduly burdensome or otherwise objectionable. That Lapetus confirmed in its Initial Objections a commitment to produce in conformity with any Court order overruling its objections

was not an invitation to litigation. It was simply to make clear that Lapetus will stand on its appropriate objections and that Defendants should be reconfigure objectionable requests accordingly.

***Cost of Production***

Lapetus has advised Defendants of the extraordinary cost of compliance with the Initial Requests. Lapetus received an estimated a cost from its account representative at Consilio, the firm which hosts Lapetus' archived data, of between $114,000 to $574,000, depending on the number of agreed search terms and volume of "hits" for each.

This estimated cost include storage fees, charges for, running search terms over the data in the staging environment, promoting documents hitting on search terms from the staging environment for review to an active workspace, performing a review for relevant documents and screening for proprietary or otherwise privileged information, and producing responsive documents. The estimated cost did not include the estimated legal cost for facilitating compliance and production.

Lapetus continues to maintain that it is entitled to cost-shifting for the costs of responding to the Subpoena. In order to determine whether a nonparty to litigation should bear the costs of gathering and copying documents, courts should consider whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party and whether the litigation is of public importance. *See In re Seroquel Rods. Liabl. Litig*., No. 6:06-md-1769-Orl-22DAB, 2007 LX 17507, at * (M.D. Fla. Dec. 6, 2007).

Lapetus is a classical disinterested third party with respect to the Litigation. Indeed, it stands to gain nothing of from the claims asserted by Abacus against Defendants and has no interest or care as to its outcome. Coventry is the largest life settlements provider in the industry and purchased over $1.4 billion in life settlement contracts in 2024. Lapetus, on the other hand, is a micro-enterprise with a single remaining employee and no revenues. The initial cost estimate by Lapetus is of such magnitude that it is literally impossible for it to comply.

Lapetus has mitigated this extreme cost burden and conducted expended a reasonable effort to determine whether it possesses documents responsive to Defendants' unobjectionable requests by contacting its former employee Dr. Jay Olshanksy, who would have been the person at Lapetus most likely to have prepared or been aware of such documents or communications.

Should Defendants desire Lapetus to additionally a physical search of its archives for documents responsive to Defendants' unobjectionable requests, it will need to advance the estimated cost prior to Lapetus undertaking it. However, the cost may be less than the original estimate due to the

narrowed requests contained in the Second Letter. Once the parties confirm on an agreed scope as to the terms and custodians for any request, Lapetus can seek a revised cost estimate.

***Responses to Revised and Narrowed Requests Contained in Second Letter***

Lapetus understands the Initial Requests set forth in the Subpoena to be narrowed and amended as set forth in the Second Letter. Lapetus' responses to the Defendants' amended requests established by the Second Letter are set forth below.

Requests 1 and 2:

The Second Letter limits and amends the documents and communications sought pursuant to these requests, and provides in relevant part:

*Defendants are amenable to narrowing the scope of these Requests to documents and communications concerning the extent and nature of the business and financial relationship between Abacus and Lapetus, including subparts (i), (ii) and (iii) of Request 2, as well as any agreements, contracts, or other documents or communications governing the provisions of LEs by Lapetus to Abacus. We agree to hold in abeyance (pending discovery discussions with Abacus) any communications directly between Abacus and Lapetus as well as documents concerning Abacus that do not relate to those underlined topics.*

**Response:**

In conformity with the Initial Call and the Second Letter, Lapetus interprets the phrase "any other financial arrangements concerning Abacus", with is item (iii) described above, to mean "any financial arrayments other than Abacus' purchase of LEs from Lapetus in the ordinary course of Lapetus business."

Subject to and without waiving the foregoing, Lapetus maintains it relevance objections. The requested documents are not relevant to the Defendants' statements upon which Abacus bases its defamation and FDUTPA claims. The extent and nature of the business relationship between Abacus and Lapetus, including any investment in Lapetus by Abacus, the convertible note disclosed in Abacus' SEC public filings, or any other non-ordinary course "financial arrangements" do not go to the truth or falsity of any of the alleged defamatory statements, as evidenced by the Complaint and the MTD Response. Further, any such documents (in addition to any communications) are readily available to Defendants through discovery requests directed to Abacus.

Subject to the terms of this letter response, Lapetus otherwise maintains the balance of its objections stated in its Initial Objections, all of which are incorporated herein by this reference, and will produce no documents responsive to this request.

Requests 3 and 4:

The Second Letter limits and amends the documents and communications sought pursuant to these requests, and provides in relevant part:

*… documents and communications concerning Coventry's statement or beliefs about Abacus, Lapetus, and the accuracy or inaccuracy of any LE or valuation, are relevant and must be produced. By way of obvious (and non-exhaustive) examples, if a Lapetus employee expressed a sympathetic (or unsympathetic) view of Defendants' statements, they would be relevant. Similarly, to the extent someone expressed their understanding that Defendants' statements were their true opinion about a particular matter, such expression would be relevant.*

**Response:**

As set forth above in this letter, Lapetus maintains its objection that Defendants' statements concerning the accuracy (or inaccuracy) of its LEs are not ones upon which Abacus bases its defamation and FDUTPA claims. It is Abacus' use of Lapetus' LEs in valuing its assets, and not their accuracy (or inaccuracy), that go to the truth or falsity of any of the alleged defamatory statements, as evidenced by the Complaint and the MTD Response.

Subject to the terms of this letter response, Lapetus otherwise maintains the balance of its objections stated in its Initial Objections, all of which are incorporated herein by this reference.

Without waiving the foregoing objections, Lapetus has made a reasonable search for documents or communications that relate to Defendants statements concerning Abacus' alleged use of Lapetus' LEs in Abacus' valuation of its assets and preparation of its financial reports, and Defendants' other statements concerning Abacus' other business activity relevant to Abacus allegations in the Complaint by contacting its former employee Dr. Jay Olshanksy, who would have been the person at Lapetus most likely to have prepared or been aware of any such documents or communications. Dr. Olshansky has advised that he is not aware of the existence of any such documents or communications.

Based upon the foregoing reasonable investigation, Lapetus has no documents to produce. Should Defendants desire that Lapetus conduct a further inspection of Lapetus' archived documents and communications for any that are within the foregoing scope, Lapetus will do so after the parties

establish agreed search terms so that Lapetus can obtain an estimate for the cost of production, within a reasonable time after the Defendants have advanced the estimated costs.

Request 5:

The Second Letter provides in relevant part:

*We stand on the language of Request 5 and expect Lapetus to produce all responsive documents.*

**Response:**

Subject to the terms of this letter response, Lapetus otherwise maintains the balance of its objections stated in its Initial Objections, all of which are incorporated herein by this reference, and will produce no documents responsive to this request.

Request 6:

The Second Letter limits and amends the documents and communications sought pursuant to this request, and provides in relevant part:

*We agree to limit Request 6 to documents and communications concerning the Fireside Chat portion of the LISA Conference, but we will otherwise seek all documents responsive to this Request.*[1]

**Response:**

As set forth above in this letter, Lapetus maintains its objection that Defendants' statements concerning the accuracy (or inaccuracy) of its LEs are not ones upon which Abacus bases its defamation and FDUTPA claims. It is Abacus' use of Lapetus' LEs in valuing its assets, and not their accuracy (or inaccuracy), that go to the truth or falsity of any of the alleged defamatory statements, as evidenced by the Complaint and the MTD Response.

Subject to the terms of this letter response, Lapetus otherwise maintains the balance of its objections stated in its Initial Objections, all of which are incorporated herein by this reference.

[1] The Second Letter states that the Lapetus agreed during the Initial Call that "documents communications concerning the debate between Mr. Olshansky and Mr. Brueger, which took place at the 2024 LISA Conference (the "Fireside Chat") are relevant [to the Litigation]." There appears to have been a miscommunication. To clarify, Lapetus agrees only that any communications concerning the truth or falsity of Defendants' allegedly defamatory statements about Abacus' ***use*** of Lapetus LEs (as opposed to their accuracy) are relevant.

Without waiving the foregoing objections, Lapetus has made a reasonable search for documents or communications that relate to any of Mr. Brueger's statements at the "Fireside Chat" portion of the LISA Conference concerning Abacus' alleged use of Lapetus' LEs in Abacus' valuation of its assets or preparation of its financial reports, or Abacus' other business activity relevant to Abacus allegations in the Complaint, by contacting its former employee Dr. Jay Olshanksy, who would have been the person at Lapetus most likely to have prepared or been aware of any such documents or communications. Dr. Olshansky has advised that he is not aware of the existence of any such documents or communications.

Based upon the foregoing reasonable investigation, Lapetus has no documents to produce. Should Defendants desire that Lapetus conduct a further inspection of Lapetus' archived documents and communications for any that are within the foregoing scope, Lapetus will do so after the parties establish agreed search terms so that Lapetus can obtain an estimate for the cost of production, within a reasonable time after the Defendants have advanced the estimated costs.

Request 7:

The Second Letter limits and amends the documents and communications sought pursuant to this request, and provides in relevant part:

*With respect to Requests 7, you represented that Lapetus does not believe that it has any responsive documents. However, you explained the difficulty of searching for communications between Abacus and any investor in Abacus, which is a publicly traded company. We agree to narrow Request 7 to documents and communications concerning or with any fund or other entity managed or controlled by Abacus, or entities that have purchased insurance policies from Abacus, including Transamerica Corp. (often referred to as "Trans" or "Transamerica"), Kohlberg Kravis Roberts & Co. L.P (often referred to as "KKR"), Nova Trading, LLC (often referred to as "Nova"), Reinsurance Group of America (often referred to as "RGA"), and any other insurers, reinsurers, credit unions, or investment banks or their affiliates.*

**Response:**

While Lapetus appreciates the Defendants' effort to narrow this Request, it remains objectionable as vague, overbroad and unduly burdensome because Defendants' place Lapetus in the position of speculating as to information that Lapetus does not and cannot know, i.e. (i) what fund or other entity may be managed or controlled by Abacus, and (ii) what entities may have purchased insurance policies from Abacus. The Request is further objectionable as overbroad in that it requests documents concerning these foregoing entities without any link to any claim asserted by Abacus in the Litigation and could encompass documents that have nothing to do with Abacus or their purchase of life insurance policies from Abacus.

Lapetus therefore interprets the Request to require the production of (i) communications with any the four (4) named entities set forth above, and (ii) any documents concerning any of the four (4) named entities above that relate to Abacus or the purchase of life insurance policies.

Subject to the terms of this letter response, Lapetus otherwise maintains the balance of its objections stated in its Initial Objections, all of which are incorporated herein by this reference.

Without waiving the foregoing objections, Lapetus has made a reasonable search for the foregoing documents or communications by contacting its former employee Dr. Jay Olshanksy, who would have been the person at Lapetus most likely to have prepared or been aware of any such documents or communications. Dr. Olshansky has advised that (i) he is not aware of any documents concerning any of the four named entities, (ii) he is not aware of the existence of any communications with Transamerica, Nova or RGA, but is aware of communications with KKR, (iii) is not aware of any commutations with or documents concerning any other entity which to his knowledge was owned or controlled by Abacus, or purchased life insurance policies from Abacus.

Based upon the foregoing reasonable investigation, Lapetus will produce the communications of Lapetus with KKR on a rolling basis, and in conformity with the terms of this letter.

Should Defendants desire to identify any other entity that is under the control or management of Abacus or is a purchaser of life insurance policies from Abacus, then Lapetus will undertake further reasonable search by contacting Dr. Olshansky to determine whether it possesses any responsive documents. Should Defendants desire that Lapetus conduct a further inspection of Lapetus' archived documents and communications for any that are within the foregoing scope, Lapetus will do so after the parties establish agreed search terms so that Lapetus can obtain an estimate for the cost of production, within a reasonable time after the Defendants have advanced the estimated costs.

Request 8:

The Second Letter provides in relevant part:

*We stand on the language of these requests.*

**Response:**

While the Second Letter appears to limit and amend the scope of documents and communications sought pursuant in the original Request 8—it also contains the statement "[w]e stand on the language of these requests." Defendants offer "context" for the original request in the Second

Letter, but Lapetus does not understand this context to alter the original request. Lapetus therefore interprets the Second Letter as not amending the original request 8.

As set forth above in this letter, Lapetus maintains its objection that Defendants' statements concerning the accuracy (or inaccuracy) of its LEs are not ones upon which Abacus bases its defamation and FDUTPA claims. Likewise, the various "analyses, studies and reviews" prepared or initiated by Coventry that compare Lapetus' LEs with LEs produced by other firms are not statements upon which Abacus bases its defamation and FDUTPA claims. Rather, it is Abacus' use of Lapetus' LEs in valuing its assets, and not their accuracy (or inaccuracy) or how they compare with other LEs, that go to the truth or falsity of any of the alleged defamatory statements, as evidenced by the Complaint and the MTD Response.

Further, to the extent that Defendants seek any of Lapetus' communications or documents concerning Lapetus' position on any "analyses, studies and reviews" prepared or initiated by Coventry comparing Lapetus' LEs with LEs produced by other firms (which again, is entirely irrelevant to the Litigation)—documents sufficient to show Lapetus' position are set forth in the transcript to the Fireside Chat at the 2024 LISA Conference and the study offered in rebuttal to Coventry's studies, and are publicly accessible.

Subject to the terms of this letter response, Lapetus otherwise maintains the balance of its objections stated in its Initial Objections, all of which are incorporated herein by this reference, and will produce no documents responsive to this request.

Requests 9 and 10:

The Second Letter provides in relevant part:

*These Requests do not seek information concerning Lapetus' specific methodologies beyond what is included in the above referenced… complaints, criticism and comparisons. We stand on the language of these requests.*

**Response:**

While the Second Letter appears to limit and amend the scope of documents and communications sought pursuant in the original Requests 9 and 10—it also contains the statement "[w]e stand on the language of these requests." However, as a result of the Initial Call, Lapetus understands Defendants to amend the documents and communications sought pursuant to this requests to require only the production of (i) communications or documents that evidence a criticism or complaint from a Lapetus customer that was received by Lapetus from the customer concerning a LE prepared for the customer, or (ii) communications with Abacus concerning Coventry's criticism of Lapetus' LEs.

Subject to the terms of this letter response, Lapetus otherwise maintains the balance of its objections stated in its Initial Objections, all of which are incorporated herein by this reference.

Without waiving the foregoing objections, Lapetus has made a reasonable search for (i) communications or documents that evidence a criticism or complaint from a Lapetus customer that was received by Lapetus from the customer concerning a LE prepared for the customer, or (ii) communications with Abacus concerning Coventry's criticism of Lapetus' LEs, by contacting its former employee Dr. Jay Olshanksy, who would have been the person at Lapetus most likely to have prepared or been aware of any such documents or communications.

Dr. Olshansky has advised that he is aware of the existence of some such documents or communications, and Lapetus will produce them on a rolling basis and in conformity with the terms of this letter.

Should Defendants desire that Lapetus conduct a further inspection of Lapetus' archived documents and communications for any that are within the foregoing scope, Lapetus will do so after the parties establish agreed search terms so that Lapetus can obtain an estimate for the cost of production, within a reasonable time after the Defendants have advanced the estimated costs.

Request 11:

Defendants do not make any amendments to this request in the Second Letter.[2]

**Response:**

Subject to the terms of this letter response, Lapetus otherwise maintains the balance of its objections stated in its Initial Objections, all of which are incorporated herein by this reference, and will produce no documents responsive to this request.

Request 12:

The Second Letter limits and amends the documents and communications sought pursuant to this request, and provides in relevant part:

*… we are willing to narrow this Request to include only documents and communications concerning those press releasees, website postings, conference presentations, and public remarks by Coventry, Abacus, Lapetus or Morpheus Research that relate to the above referenced topics.*

[2] Defendants appear to acknowledge in the Second letter that if any production ordered by the Court, it must be subject to "attorneys eyes only" treatment.

Defendants then propose the search terms “press”, “release”, “statement”, “remarks”, “debate”, “conference”, “post*”, “short-seller”, “Morpheus” or “website”, when combined with “Abacus” or “Coventry”— without agreeing to limit Lapetus’ search to these terms.

**Response:**

Subject to the terms of this letter response, Lapetus maintains its objections stated in its Initial Objections, all of which are incorporated herein by this reference.

Without waiving the foregoing objections, Lapetus will conduct an inspection of Lapetus’ archived communications using Defendants’ proposed search terms and such other search terms as that parties may propose, when combined with “Abacus” or “Coventry”, so that Lapetus can obtain an estimate for the cost of production, within a reasonable time after the Defendants have advanced the estimated costs.

Request 13:

Defendants do not make any amendments to this request in the Second Letter.

**Response:**

As a result of the Initial Call, Lapetus better understands that Defendants seek by this request documents and communications concerning Lapetus’ decision to discontinue its historical business of providing LEs to customers in the ordinary course.

Subject to the terms of this letter response, Lapetus maintains its objections stated in its Initial Objections, all of which are incorporated herein by this reference.

Without waiving the foregoing objections, Lapetus will documents sufficient to show the basis for Lapetus’ decision to discontinue its historical business of providing LEs to customers in the ordinary course on a rolling basis and in conformity with the terms of this letter.

Request 14:

Defendants do not make any amendments to this request in the Second Letter.

**Response:**

Subject to the terms of this letter response, Lapetus otherwise maintains the balance of its objections stated in its Initial Objections, all of which are incorporated herein by this reference.

Without waiving the foregoing objections, Lapetus has made a reasonable search for communications or documents responsive to this request by contacting its former employee Dr. Jay Olshanksy, who would have been the person at Lapetus most likely to have prepared or been aware of any such documents or communications.

Dr. Olshansky has advised that he is aware of the existence of some such documents or communications, and Lapetus will produce them on a rolling basis and in conformity with the terms of this letter.

Should Defendants desire that Lapetus conduct a further inspection of Lapetus' archived documents and communications for any that are within the foregoing scope, Lapetus will do so after the parties establish agreed search terms so that Lapetus can obtain an estimate for the cost of production, within a reasonable time after the Defendants have advanced the estimated costs.

Request 15:

Defendants do not make any amendments to this request in the Second Letter. [3]

**Response:**

Subject to the terms of this letter response, Lapetus otherwise maintains the balance of its objections stated in its Initial Objections, all of which are incorporated herein by this reference, and will produce no documents responsive to this request.

* * *

[3] Defendants appear to acknowledge in the Second letter that if any production ordered by the Court, it must be subject to "attorneys eyes only" treatment.

Lapetus is hopeful that its responses above and forthcoming production will adequately resolve all matters concerning the Subpoena and alleviate the need for any motion practice. In the event that Defendants determine otherwise, please contact me so that we may further confer if desirable, or alternatively discuss how to move forward in the most efficient manner possible.

Very truly yours,

Paul N. Mascia, Esq.

Paul N. Mascia
Shareholder

135 W Central Boulevard
Suite 300
Orlando, FL 32801